Michael MARN, Relator,

v.

**FAIRVIEW PHARMACY SERVICES LLC, Respondent,**

**Department of Employment and Economic Development, Respondent.**

No. A07–1644.

Court of Appeals of Minnesota.

Sept. 30, 2008.

Sharon E. Jacks, St. Paul, MN, for relator.

Dennis J. Merley, H. Le Phan, Felhaber, Larson, Fenlon & Vogt, P.A., Minneapolis, MN, for respondent Fairview Pharmacy Services LLC.

Lee B. Nelson, Katrina I. Gulstad, Department of Employment and Economic Development, St. Paul, MN, for respondent Department.

Considered and decided by CONNOLLY, Presiding Judge; MINGE, Judge; and WORKE, Judge.

## OPINION

WORKE, Judge.

Relator challenges the decision by the unemployment-law judge (ULJ) that he was disqualified from receiving unemployment benefits because he had been discharged for misconduct after he contacted one of his employer's business partners and urged it to terminate a business contract, arguing that (1) he acted reasonably under the circumstances and made a good-faith error in judgment; and (2) his due-process rights were violated because the ULJ relied on hearsay and did not grant him an additional hearing in order to consider an affidavit submitted with his request for reconsideration. Because the ULJ did not err in determining that relator breached a duty of loyalty to his employer constituting disqualifying misconduct and because relator received a fair hearing, we affirm.

## FACTS

Relator Michael Marn worked as a patient financial advocate for respondent Fairview Pharmacy Services LLC. Fairview has a business contract with Blue Cross Blue Shield of Minnesota (BCBS) and services a large number of BCBS-insured patients. Relator was aware that the contract resulted in millions of dollars of business for Fairview, but believed that the pharmacy volume had exceeded the capacity of the staff to provide adequate service. Relator was concerned that prescriptions were being filled without being properly verified by pharmacists. Relator spoke with Fairview employees, including Fairview's president, Bob Beacher, about leadership issues and patient-safety concerns. Relator also once anonymously called the Minnesota Board of Pharmacy and generally inquired with a hypothetical question as to whether what he believed was going on at Fairview constituted a regulatory violation. Relator was told that the situation he described was a violation. However, relator never reported to the board what he believed was occurring at Fairview. Relator then talked to an individual he knew who worked at BCBS. This individual encouraged relator to contact Al Heaton, director of pharmacies for BCBS. Relator called Heaton a number of times and left anonymous voicemail messages expressing his opinion that Fairview was being stretched to the limit of its operating capacity and that it was detrimental to patients with BCBS insurance. Relator suggested that BCBS reevaluate its contract with Fairview. Although uncertain of what the result would be from his messages, relator understood that steering business away from Fairview was certainly a possibility.

In January 2007, Heaton approached Kari Amundson, Fairview's director of specialty services, and told her that he received voicemail messages from an individual who alerted him to poor service within Fairview. Heaton accessed his voicemail and played two of the messages for Amundson and Vicki Stevens, Fairview's director of human resources. Although the caller did not identify himself, Amundson recognized relator's voice. In the messages, relator stated that he was a concerned employee who felt that it would be a good thing for BCBS to terminate its contract with Fairview because patients were suffering from poor service. Relator also stated that Fairview was not prepared to deal with changes to Medicare that affected the pharmacy business. Relator further stated that Fairview made promises that it could not keep and that it could not deliver on. Additionally, relator sug-

gested that Fairview was utterly unprepared and inadequately managed after it entered into the contract with BCBS. Finally, relator stated that BCBS should consider starting its own specialty pharmacy in order to take the pressure off of Fairview.

Beacher and Stevens met with relator and asked him if he knew anything about the calls. Relator's reply was: "No comment." Beacher gave relator the option to resign in exchange for telling him whom relator had called and what information he divulged. Relator told Beacher that he wanted to resign, but refused to tell Beacher whom he had called. Beacher then terminated relator for acting in a manner that was contrary to Fairview's best interests.

Following his discharge, relator established a benefit account with respondent Department of Employment and Economic Development (DEED), and it was initially determined that relator was disqualified from receiving unemployment benefits. Relator appealed. Following a hearing, the ULJ determined that relator was discharged because of employment misconduct and disqualified from receiving unemployment benefits. The ULJ decided that relator's actions were against the standards of behavior that Fairview had a right to reasonably expect of him when he violated his duty of loyalty by interfering with Fairview's business contract. The ULJ determined that the evidence did not show that public safety was in danger or that relator thoroughly pursued other avenues for a solution to his perceived problem with Fairview.

Relator then requested reconsideration and submitted an affidavit from a pharmacy technician who had been employed at Fairview. The ULJ affirmed, noting that relator made the same arguments in his request for reconsideration as he did at the hearing. Regarding the affidavit, the ULJ determined that relator failed to show good cause for failing to submit the affidavit at the hearing and that it would not likely change the outcome of the decision. This certiorari appeal follows

## ISSUES

I. Did the ULJ err in determining that relator was discharged for employment misconduct and disqualified from receiving unemployment benefits?

II. Were relator's due-process rights violated when the ULJ permitted hearsay testimony and when the ULJ did not consider an affidavit submitted with relator's request for reconsideration?

## ANALYSIS

### I.

 This court may affirm the decision of the ULJ, remand the case for further proceedings, or reverse or modify the decision

if the substantial rights of the petitioner may have been prejudiced because the findings, inferences, conclusion, or decision are:

(1) in violation of constitutional provisions;

(2) in excess of the statutory authority or jurisdiction of the department;

(3) made upon unlawful procedure;

(4) affected by other error of law;

(5) unsupported by substantial evidence in view of the entire record as submitted; or

(6) arbitrary or capricious.

Minn.Stat. § 268.105, subd. 7(d) (2006).

 The ULJ determined that relator was disqualified from receiving unemploy-

ment benefits because he was discharged for misconduct. An applicant for unemployment benefits is disqualified from receiving benefits if the conduct causing his discharge amounts to employment misconduct. Minn.Stat. § 268.095, subd. 4(1) (2006). Whether an employee has committed employment misconduct is a mixed question of fact and law. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn.2002). "Whether the employee committed a particular act is a question of fact." *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn.App.2006). In making factual findings, the ULJ must make credibility determinations, to which we accord deference, and we review the findings in the light most favorable to the decision. *Id.* The ULJ's findings will not be disturbed when they are substantially supported by the evidence. *Id.* But whether an act constitutes employment misconduct is a question of law, which we review de novo. *Id.*

 Employment misconduct is "any intentional, negligent, or indifferent conduct, on the job or off the job (1) that displays clearly a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee, or (2) that displays clearly a substantial lack of concern for the employment." Minn.Stat. § 268.095, subd. 6(a) (2006).

> Inefficiency, inadvertence, simple unsatisfactory conduct, a single incident that does not have a significant adverse impact on the employer, conduct an average reasonable employee would have engaged in under the circumstances, poor performance because of inability or incapacity, good faith errors in judgment if judgment was required, or absence because of illness or injury with proper notice to the employer, are not employment misconduct.

*Id.* This definition of employment misconduct is exclusive, and no other definition shall apply. *Id.*, subd. 6(e) (2006).

The ULJ found that relator committed misconduct by breaching his duty of loyalty to his employer when he attempted to interfere with a business contract. While Minnesota courts have not previously addressed an unemployment-benefits case involving an employee who interferes with his employer's business contracts, caselaw has established that employees owe a duty of loyalty to their employers. *See Rehab. Specialists, Inc. v. Koering*, 404 N.W.2d 301, 304 (Minn.App.1987) (stating that an employee's duty of loyalty prohibits her from soliciting her employer's customers or from otherwise competing with her employer).

Here, relator worked as a patient financial advocate for Fairview. Relator was discharged for contacting BCBS and urging the company to reevaluate a business contract it has with Fairview. The ULJ found that relator's conduct was a serious violation of the standards of behavior Fairview had a right to reasonably expect of him. Although relator disputes the characterization of the messages he left for BCBS, it is undisputed that relator suggested to one of Fairview's major customers that (1) Fairview was not living up to its promises and that patients were suffering as a result, (2) BCBS should reevaluate the contract, and (3) BCBS should start its own specialty pharmacy.

Relator argues that his conduct was behavior an average employee would have engaged in. However, this is not a "whistleblower" situation. If relator was concerned about how prescriptions were being filled, an appropriate recourse might have been to contact the board of pharmacy with a specific report. Relator also could have called Fairview's anonymous hotline to report alleged wrongdoing. It is undis-

puted that relator did not report any alleged wrongdoing to either the board or the hotline. Instead, relator contacted one of Fairview's major customers and effectively suggested that BCBS address the perceived problem by terminating a business contract.

Relator also argues that he made a good-faith error in judgment and that his conduct was justified because he had a good-faith belief that patients were suffering harm. A good-faith error in judgment is not employment misconduct only in situations when judgment is required. Minn. Stat. § 268.095, subd. 6(a). We note that in tort law, whether interference with a contract is justified is a factual determination of what is reasonable conduct under the circumstances. *Kallok v. Medtronic, Inc.,* 573 N.W.2d 356, 362 (Minn.1998). Under the circumstances, judgment was not required and even if judgment had been required, relator's conduct was not reasonable. First, judgment was not required because relator worked as a patient financial advocate, his job responsibilities were to assist patients in understanding insurance coverage. Thus, relator acted outside the scope of his position by contacting BCBS. Second, relator could not have honestly believed that his actions were authorized because after he was confronted by Fairview executives, he replied: "No comment." If relator's intent had been to effect change with Fairview's policies, he had an opportunity to discuss his issues when he spoke with Fairview's president. Third, as stated previously, relator would have acted reasonably if he had called Fairview's hotline or contacted the board of pharmacy with a specific report. Instead, not only did relator contact one of Fairview's customers, which alone was unreasonable under the circumstances and indifferent conduct under Minn.Stat. § 268.095, subd. 6(a), but relator then went far beyond in expressing a concern to

BCBS because he offered a solution that was adverse to Fairview's interests. Finally, any claim that his conduct was a good-faith effort to protect patients is of limited significance because the record does not contain any evidence that patients suffered any harm.

Because relator had a duty of loyalty to his employer and he violated that duty when he attempted to interfere with Fairview's business contract, the ULJ did not err in determining that relator was discharged for employment misconduct and disqualified from receiving unemployment benefits.

## II.

■ Relator also argues that his due-process rights were violated because he did not receive a fair hearing. Relator contends that Fairview should have produced tapes of the voicemail messages because the witnesses' testimony regarding the messages was hearsay. Under the rules, "[s]ubpoenas are available to a party to compel ... the production of documents or other exhibits upon a showing of necessity by the party applying for subpoenas." Minn. R. 3310.2914, subp. 1 (2007). But relator did not request a subpoena for the voicemail messages. Instead, relator objected to testimony about the voicemail messages based on hearsay.

Under the Minnesota Rules, the ULJ

> may receive any evidence which possesses probative value, *including hearsay,* if it is the type of evidence on which reasonable, prudent persons are accustomed to rely in the conduct of their serious affairs.... A judge is not bound by statutory and common law rules of evidence. The rules of evidence may be used as a guide in a determination of the quality and priority of evidence offered.

Minn. R. 3310.2922 (2007) (emphasis added). The ULJ determined that the witnesses could testify regarding what they heard on the voicemail messages and what they contemporaneously wrote down and hearsay is authorized by the rules. Therefore, the ULJ did not err in allowing the witnesses to testify regarding the messages without producing the voicemail messages. Further, the voicemail messages are cumulative evidence under the circumstances because Fairview employees already testified as to what was on the voicemail messages and the ULJ does not need to consider cumulative evidence. *See* Minn. R. 3310.2914, subp. 1 ("A request for a subpoena may be denied if the testimony or documents sought would be irrelevant, immaterial, or unduly cumulative or repetitious.").

 Finally, relator argues that the ULJ should have considered an affidavit from a pharmacy technician that he provided in his request for reconsideration. The ULJ determined that she did not need to consider the affidavit because relator failed to show good cause for not submitting the affidavit for the hearing and because the affidavit would not likely change the outcome. "This court will defer to the ULJ's decision not to hold an additional hearing." *Ywsuf v. Teleplan Wireless Servs., Inc.,* 726 N.W.2d 525, 533 (Minn. App.2007)

Upon a request for reconsideration relator can request an additional evidentiary hearing, and the ULJ must order an additional hearing upon a showing that evidence that was not submitted at the initial hearing "would likely change the outcome of the decision and there was good cause for not having previously submitted that evidence." Minn.Stat. § 268.105, subd. 2(a), (c)(1) (2006). The affidavit alleges that Fairview violated rules in dispensing prescriptions; however, it does not show

that relator did not commit employment misconduct by violating a duty of loyalty he owed to Fairview. Because relator failed to show a good reason why the affidavit was not produced for the hearing and because consideration of the affidavit would not change the result, the ULJ did not err in refusing to consider the affidavit.

## DECISION

Because relator breached a duty of loyalty to his employer and because he received a fair hearing, the ULJ did not err in determining that relator was discharged for employment misconduct and disqualified from receiving unemployment benefits.

**Affirmed.**