*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1208**

Angela M. Schroeder,
Relator,

vs.

Angel Eyes, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed April 25, 2016
Affirmed
Halbrooks, Judge**

Department of Employment and Economic Development
File No. 33432336-3

Angela M. Schroeder, Eagan, Minnesota (pro se relator)

Angel Eyes, Inc., Woodbury, Minnesota (respondent)

Lee B. Nelson, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Bjorkman, Presiding Judge; Halbrooks, Judge; and

Smith, John, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HALBROOKS**, Judge

Relator challenges the unemployment-law judge's (ULJ) determination that she is ineligible for unemployment benefits because she was discharged for misconduct. We affirm.

**FACTS**

Respondent Angel Eyes, Inc., d/b/a Posh Pooch, is a dog-grooming and pet boutique owned by Julie and Frank Erling. Relator Angela M. Schroeder began working as a dog groomer for Angel Eyes in June 2014. On Saturday, February 21, 2015, Schroeder was at work. In the midst of her shift, she went to the parking lot with coworker J.D. Schroeder showed J.D. a bottle of tequila that she had in her car and offered her a drink. J.D. smelled the bottle to confirm that it was tequila. J.D. told Schroeder that she did not want any tequila and went back inside. Schroeder came in a short time later. She subsequently returned to the parking lot a second time.

Following her second trip outside, Schroeder started to act differently. The other employees working that day reported that Schroeder slurred her words, was clumsy, and acted giddy and silly. While no one saw Schroeder consume alcohol, the other employees thought that Schroeder was acting as if she were intoxicated. During Schroeder's shift, she spoke with customers and groomed the dogs using sharp instruments.

The Erlings were not working that Saturday, so they did not find out about Schroeder's behavior until the following Monday when A.M. and E.L., two of the

2

employees working with Schroeder on February 21, separately informed them of what had happened. Another employee, J.R., called Julie on Monday to report Schroeder's behavior.

The Erlings confronted Schroeder on Tuesday about her behavior. Schroeder initially denied consuming alcohol and becoming intoxicated while at work. Julie then asked her to tell the truth. Schroeder responded that this was the first time that she had done this and promised to never do it again. The Erlings understood Schroeder's statement to be an admission of her intoxication. Julie told Schroeder that they could not tolerate the behavior and discharged her. Julie followed up with J.D. the following day, who confirmed that Schroeder behaved as if she were intoxicated and told Julie about the tequila in Schroeder's car. J.D. added that she did not witness Schroeder consume alcohol.

After being discharged, Schroeder filed for unemployment benefits with respondent Minnesota Department of Employment and Economic Development (DEED). DEED issued an initial determination that Schroeder is eligible for benefits. Angel Eyes appealed that decision.

During the hearing before a ULJ, the Erlings testified to what their employees told them happened on February 21 as well as what happened during their meeting with Schroeder. Schroeder testified that she had alcohol in her trunk at work and that she showed it to J.D. but denied that she drank it. Schroeder claimed that she always acted silly and was not acting any differently that day. Further, Schroeder stated that she only joked about drinking and that it was not serious. According to Schroeder, she did not

admit to the Erlings that she had been drinking. She stated that she would not have consumed alcohol at work because it would risk her job, which she loved. Although Schroeder acknowledged that she told the Erlings, "[T]his is the first time anything like this has ever happened. If you give me a second chance I will show you that nothing like this would ever happen again," she stated that the phrase "nothing like this would ever happen again" referred only to her joking about drinking at work.

The ULJ found that Schroeder was intoxicated at work on February 21. Therefore, the ULJ determined that Schroeder is ineligible for unemployment benefits on the ground that being intoxicated at work constitutes employee misconduct under Minn. Stat. § 268.095, subd. 6 (2014) because it "was a serious violation of Angel Eyes' reasonable expectations and displayed clearly a substantial lack of concern for the employment." Schroeder filed a request for reconsideration, asserting that she (1) did not consume alcohol at work or admit to doing so, (2) was willing to take a drug test to prove that she did not consume alcohol, and (3) was willing to take a lie-detector test. In an order of affirmation, the ULJ noted that Schroeder's first basis for reconsideration was repetitive of her argument at the hearing and that the new information about her willingness to take drug and lie-detector tests did not warrant an additional hearing. This certiorari appeal follows.

## DECISION

Minn. Stat. § 268.105, subd. 7(d) (Supp. 2015) provides:

> The Minnesota Court of Appeals may affirm the decision of the unemployment law judge or remand the case for further proceedings; or it may reverse or modify the

4

decision if the substantial rights of the petitioner may have been prejudiced because the findings, inferences, conclusion, or decision are:

> (1) in violation of constitutional provisions;
> (2) in excess of the statutory authority or jurisdiction of the department;
> (3) made upon unlawful procedure;
> (4) affected by other error of law;
> (5) unsupported by substantial evidence in view of the entire record as submitted; or
> (6) arbitrary or capicious.

On appeal, Shroeder again asserts that she did not commit employment misconduct because she was not intoxicated while she was working on February 21. Employment misconduct is defined as "any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: . . . a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee." Minn. Stat. § 268.095, subd. 6(a)(1). If an employee is discharged for employment misconduct, she is disqualified from receiving unemployment compensation benefits. Minn. Stat. § 268.095, subd. 4(1) (2014).

Whether an employee engaged in employment misconduct is a mixed question of fact and law. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002). Whether the employee committed the specific act or acts alleged to be misconduct is a question of fact. *Scheunemann v. Radisson S. Hotel*, 562 N.W.2d 32, 34 (Minn. App. 1997). We review the ULJ's "factual findings in the light most favorable to the decision" and will not disturb them as long as the evidence reasonably sustains them. *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011) (quotation omitted). Whether the

employee's act constitutes employment misconduct presents a question of law, which we review de novo. *Scheunemann*, 562 N.W.2d at 34.

In this matter, the ULJ made credibility determinations. "Credibility determinations are the exclusive province of the ULJ and will not be disturbed on appeal." *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 345 (Minn. App. 2006). If the credibility of a witness has a significant effect on the outcome of the decision, the ULJ must set out the reason or reasons for crediting or discrediting that witness's testimony. Minn. Stat. § 268.105, subd. 1a(a) (2014). The credibility of a witness has a significant effect on the decision when the ULJ's misconduct determination rests on disputed testimony. *Wichmann v. Travalia & U.S. Directives*, 729 N.W.2d 23, 29 (Minn. App. 2007).

Schroeder does not dispute that being intoxicated while grooming animals would constitute employment misconduct, but she contends that there is insufficient evidence to prove that she was intoxicated at work. More specifically, Schroeder argues that the only proof of her intoxication was provided through the Erlings' testimony that was based on hearsay statements made by her coworkers who worked with her on February 21.

Although hearsay is generally excluded from evidence at trial absent an exemption or exception,[1] a ULJ "is not bound by statutory and common law rules of evidence." Minn. R. 3310.2922 (2015). As long as the hearsay evidence possesses probative value and is of the type that reasonable, prudent persons are accustomed to relying on in the

---

[1] Minn. R. Evid. 802.

conduct of their serious affairs, the ULJ may rely on it. *Id.*; *Marn v. Fairview Pharmacy Servs. LLC*, 756 N.W.2d 117, 122-23 (Minn. App. 2008).

Here, the Erlings testified to their knowledge based upon statements of multiple employees, all of whom reported that Schroeder acted intoxicated during work on February 21. The statements are probative because they illuminate Schroeder's condition that day. Each employee independently confirmed the same set of facts. In addition, Schroeder testified that she got along well with all of her coworkers and acknowledged that they had no reason to lie.

The ULJ found the Erlings' testimony to be credible because it was "detailed, specific and followed the most logical chain of events." The ULJ further found that, although the Erlings' testimony was partially based on hearsay, "the hearsay was reliable because there were multiple employees [who] reported the incident without any apparent motivation to fabricate the situation."

The ULJ found not credible Schroeder's testimony that she never drank alcohol while working. The ULJ noted that it was "highly unlikely that [the four] employees would fabricate such a serious allegation about Schroeder unless it was true." In addition, the ULJ noted that Schroeder showed J.D. the tequila in her car and offered her a drink. With respect to Schroeder's explanation of what she meant when she told the Erlings that she would "never do it again," the ULJ found Schroeder's testimony to be "overly convenient and not credible."

The ULJ's determination that Schroeder is ineligible for unemployment benefits because she was discharged for misconduct is well-supported by the record.

**Affirmed.**