Sarah L. **SKARHUS**, Relator,

v.

**DAVANNI'S INC.**, Respondent,

**Department of Employment and Economic Development, Respondent.**

No. A05–1995.

Court of Appeals of Minnesota.

Sept. 19, 2006.

Sarah Skarhus, Crystal, MN, pro se relator.

Davanni's Inc., Davannis Pizza & Hot Hoagies, Plymouth, MN, respondent.

Linda A. Holmes, Department of Employment and Economic Development, St. Paul, MN, for respondent Department of Employment and Economic Development.

Considered and decided by ROSS, Presiding Judge; GORDON W. SHUMAKER, Judge; and WRIGHT, Judge.

## O P I N I O N

WRIGHT, Judge.

Relator challenges the determination by the unemployment law judge (ULJ) that relator was disqualified from receiving unemployment benefits because she committed employment misconduct and that relator did not show good cause for failing to participate in an evidentiary hearing. Relator argues that (1) her conduct does not satisfy the statutory definition of "employment misconduct" because theft of food valued at less than four dollars was a single incident without a significant adverse impact on her employer, and (2) she did not participate in the hearing because it was too soon to ask her new employer for time off or to use the telephone during working hours. We affirm.

## FACTS

Relator Sarah Skarhus was employed by Davanni's Riverside (Davanni's) from March through July 2005. Skarhus's duties included food preparation and working as a cashier. On July 5, 2005, Skarhus went to Davanni's on her day off and rang up an order for herself. Skarhus ordered extra beef on her sandwich and also placed an order for "Just Cuz" cheese bread. "Just Cuz" is a code indicating that free cheese bread has been given to a customer when there has been an error on the part of Davanni's. Skarhus did not charge herself for the extra beef or the cheese bread, but she charged the rest of her order to her employee account. Another employee reported Skarhus to the management. Skarhus was fired that same day for food theft.

Skarhus applied for unemployment benefits with the Department of Employment and Economic Development (department). Skarhus stated in her application for benefits that she "knew not charging yourself for extra food would get you fired" but that she intended to pay for the additional items and simply rang up the order wrong because she was in a hurry. A department adjudicator made an initial determination that Skarhus had been discharged for employment misconduct.

Skarhus appealed the department's initial determination, and a hearing before a ULJ was scheduled for August 16, 2005. Skarhus faxed a letter on August 15 to the department indicating that she could not participate in the hearing because of her work schedule at her new job. In her letter, Skarhus also challenged the credi-

bility of Davanni's witnesses and alleged that she had been underpaid by Davanni's.

At the hearing, a Davanni's general manager presented receipts and a statement signed by another Davanni's employee describing the incident of misconduct. The total amount of the theft was less than four dollars. Although Skarhus did not participate in the hearing, her faxed letter was received in evidence and considered by the ULJ.

The ULJ determined that Skarhus had been discharged for employment misconduct and, therefore, was disqualified from receiving unemployment benefits. The ULJ concluded that Skarhus's action, although a single incident of misconduct, had a significant adverse impact on Davanni's. The ULJ reasoned that "Skarhus's conduct certainly called into question her honesty and trustworthiness, important considerations for an employee handling an employer's cash."

Skarhus requested reconsideration of the ULJ's decision, seeking another hearing and arguing that the incident did not have a significant adverse impact on Davanni's. In its order of affirmation, the ULJ affirmed Skarhus's disqualification from receiving unemployment benefits. The ULJ found that Skarhus had not shown good cause for missing the first hearing and that a new evidentiary hearing was not required. This certiorari appeal followed.

## ISSUES

I. Did relator's theft have a significant adverse impact on her employer so as to constitute employment misconduct?

II. Did relator show good cause for failing to appear at the evidentiary hearing before the ULJ?

III. Is relator entitled to relief based on any of her other arguments?

## ANALYSIS

### I.

An employee who is discharged for employment misconduct is disqualified from receiving unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2004). Employment misconduct means "intentional, negligent, or indifferent conduct, on the job or off the job (1) that displays clearly a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee, or (2) that displays clearly a substantial lack of concern for the employment." *Id.*, subd. 6(a) (2004). But the statutory definition of employment misconduct specifically exempts "a single incident that does not have a significant adverse impact on the employer." *Id.* Skarhus argues that, because her conduct falls under this exemption, the ULJ erred in his determination that she is disqualified from receiving unemployment benefits.

When reviewing the decision of a ULJ, we may affirm the decision, remand it for further proceedings, or reverse or modify it if the substantial rights of the petitioner have been prejudiced because the findings, inferences, conclusion, or decision are "(1) in violation of constitutional provisions; (2) in excess of the statutory authority or jurisdiction of the department; (3) made upon unlawful procedure; (4) affected by other error of law; (5) unsupported by substantial evidence in view of the entire record as submitted; or (6) arbitrary or capricious." Minn.Stat. § 268.105, subd. 7(d) (Supp.2005).[1]

---

1. This standard of review applies to decisions made by the ULJ on or after June 25, 2005. 2005 Minn. Laws ch. 112, art. 2, § 34.

Whether an employee committed employment misconduct is a mixed question of fact and law. *Schmidgall v. Film-Tec Corp.,* 644 N.W.2d 801, 804 (Minn. 2002). Whether the employee committed a particular act is a question of fact. *Scheunemann v. Radisson S. Hotel,* 562 N.W.2d 32, 34 (Minn.App.1997). We view the ULJ's factual findings in the light most favorable to the decision, *Lolling v. Midwest Patrol,* 545 N.W.2d 372, 377 (Minn. 1996), giving deference to the credibility determinations made by the ULJ, *Jenson v. Dep't of Econ. Sec.,* 617 N.W.2d 627, 631 (Minn.App.2000), *review denied* (Minn. Dec. 20, 2000). In doing so, we will not disturb the ULJ's factual findings when the evidence substantially sustains them. Minn.Stat. § 268.105, subd. 7(d). But whether the act committed by the employee constitutes employment misconduct is a question of law, which we review de novo. *Scheunemann,* 562 N.W.2d at 34.

Skarhus admits that she knew taking food from her employer without paying for it was theft and could result in termination. Prior to this incident, Skarhus had signed a Davanni's policy statement indicating that she understood that "[d]ishonesty in any form may be grounds for dismissal" and that "[u]nlawful activity such as theft or vandalism by an employee … may be prosecuted by the company." But Skarhus claims that she intended to pay for the food. The ULJ did not find Skarhus's contention credible, and we defer to the ULJ's determination in this regard. *Jenson,* 617 N.W.2d at 631. Accordingly, the record before us establishes that Skarhus engaged in intentional conduct on the job that seriously violates the standards of behavior the employer has the right to expect of the employee. Minn.Stat. § 268.095, subd. 6(a).

Thus, whether this act of theft is exempt from the statutory definition of employment misconduct turns on whether the theft of food valued at less than four dollars had a significant adverse impact on the employer. We acknowledge that, using the analytical approach urged by Skarhus, we could focus solely on the minimal value of the stolen food. But the value of the stolen items is not the dispositive factor in our analysis. Deciding whether the exemption applies based on the value of the items involved in the theft would not only narrow the inquiry to an economic analysis that could, in many instances, require extensive fact-finding to determine whether a specific dollar value was significant for a particular employer, but also disregard the type of adverse impact that is not readily quantifiable.

Rather than focusing solely on the amount of the theft to determine whether it had a significant adverse impact on the employer, we examine Skarhus's conduct in the context of her job responsibilities at Davanni's. Skarhus's responsibilities as a cashier required her to handle the money of Davanni's and its customers and to accurately account for items sold to customers and employees. After Skarhus's theft, Davanni's could no longer entrust her with those responsibilities. Thus, Davanni's ability to assign the essential functions of the job to its employee was undermined by the employee's conduct. Under these circumstances, we conclude that Skarhus's theft constitutes a single act that had a significant adverse impact on the employer. Accordingly, the ULJ correctly determined that Skarhus's conduct did not fall under the single-incident exception to employment misconduct set forth in Minn. Stat. § 268.095, subd. 6 (2004).

**II.**

After an adverse decision by a ULJ, a relator may file a request for re-

consideration. Minn.Stat. § 268.105, subd. 2(d) (Supp.2005).

> If the involved applicant or involved employer who filed the request for reconsideration failed to participate in the evidentiary hearing[,] ... an order setting aside the findings of fact and decision and directing that an additional evidentiary hearing be conducted must be issued if the party who failed to participate had good cause for failing to do so.

*Id.* A reviewing court accords deference to a ULJ's decision not to hold an additional hearing and will reverse that decision only for an abuse of discretion. *See Goodwin v. BPS Guard Servs., Inc.,* 524 N.W.2d 28, 30 (Minn.App.1994) (deferring to commissioner's discretion not to remand for new hearing before referee when party failed to submit testimony at first hearing).

The ULJ found that Skarhus had not shown good cause for failing to participate in the evidentiary hearing. The record establishes that Skarhus's mother called to inform the department that Skarhus could not participate in the hearing because she had to work. The department offered to reschedule, and Skarhus's mother indicated that she would check with Skarhus about another date. Rather than proposing an alternate date for the hearing, Skarhus faxed a letter to the ULJ on the day before the hearing stating that her work schedule precluded her from participating.

■ "Good cause" is "a reason that would have prevented a reasonable person acting with due diligence from participating at the evidentiary hearing." Minn. Stat. § 268.105, subd. 2(d). Failing to attend the hearing because it conflicted with Skarhus's work schedule is not "good cause" when the department offered to reschedule, but Skarhus neither attempted to reschedule the hearing nor demonstrated that a request for time off work to attend the hearing was denied. Based on this record, we will not disturb the ULJ's decision to deny the request for an additional evidentiary hearing.

### III.

■ Skarhus raises several other issues, none of which entitles her to relief. First, Skarhus challenges the testimony of the Davanni's manager who participated in the evidentiary hearing because he was not present when the incident occurred. But a ULJ is authorized to conduct a hearing without conforming to the rules of evidence. *Id.,* subd. 1(b) (Supp.2005). A witness at an evidentiary hearing is not required to have firsthand knowledge because a ULJ "may receive any evidence which possesses probative value, including hearsay." Minn. R. 3310.2922 (2005); *see Vang v. A–1 Maint. Serv.,* 376 N.W.2d 479, 482 (Minn.App.1985) (stating that hearsay may be sufficient to support ULJ's decision). The manager presented Davanni's case to the ULJ and testified about a conversation he had with Skarhus after her discharge, during which Skarhus never mentioned that she intended to pay for the food. This testimony was relevant and properly considered by the ULJ.

■ Skarhus also challenges the credibility of a Davanni's witness who provided a statement for the hearing. This argument is misplaced. Credibility determinations are the exclusive province of the ULJ and will not be disturbed on appeal. *Jenson,* 617 N.W.2d at 631. In addition, Skarhus claims that Davanni's stole from her because it did not pay her adequately for her weekend hours. But Davanni's weekend-pay policies are not properly before us. Finally, Skarhus asserts that the ULJ ignored her submissions. Because this contention is not supported by the record, it is without merit.

## DECISION

Because relator's theft undermined the employer's ability to assign essential job functions to relator, this conduct constitutes a single act that had a significant adverse impact on the employer. Accordingly, the ULJ properly determined that relator is disqualified from receiving unemployment benefits because she committed employment misconduct.

**Affirmed.**