*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2046**

Nimco Osman,
Relator,

vs.

Supershuttle International, Inc.,
Respondent,
Department of Employment and Economic Development,
Respondent.

**Filed August 25, 2014
Affirmed
Reyes, Judge**

Department of Employment and Economic Development
File No. 31295342-3

Nimco H. Osman, Minneapolis, Minnesota (pro se relator)

Supershuttle International, Inc., Scottsdale, Arizona (respondent employer)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (respondent department)

        Considered and decided by Reyes, Presiding Judge; Hooten, Judge; and Kirk, Judge.

## U N P U B L I S H E D   O P I N I O N

**REYES**, Judge

        In this certiorari appeal from the decision of an unemployment-law judge (ULJ) that relator is ineligible for unemployment benefits because she was discharged for

employment misconduct, relator argues that (1) she did not commit employment misconduct; (2) she was denied a fair hearing because the ULJ did not contact her witnesses and permitted the testimony of the employer's third witness; and (3) the employer's witnesses lied. We affirm.

**FACTS**

Relator Nimco Osman worked for respondent Supershuttle International, Inc. as a dispatcher and customer-service representative beginning in 2005. In July 2008, Osman received a written disciplinary warning for using profane and abusive language toward a supervisor. In October 2010, she received a second written warning and an unpaid, two-day suspension after she made profane and disparaging oral and written statements about management. In May 2013, Osman had three telephone conversations with Supershuttle's general manager. According to Supershuttle, Osman argued with the general manager and hung up on him on all three occasions.

On May 31, Supershuttle's controller called a meeting with Osman and the operations manager. The controller later testified that the purpose of the meeting was to discuss Osman's interactions with the general manager, but the controller decided to terminate Osman's employment after she became belligerent during the meeting. Osman testified that she was informed of the discharge decision as soon as she entered the room, suggesting that the decision could not have been based on what happened during the meeting.

In June 2013, respondent Minnesota Department of Employment and Economic Development (DEED) determined that Osman was eligible for unemployment benefits.

2

Supershuttle appealed, and a ULJ conducted an evidentiary hearing by telephone on August 5, 2013. Osman, Supershuttle's controller, and Supershuttle's general manager were present and testified. Supershuttle's operations manager also testified after joining the hearing in progress. Osman's witnesses did not testify. The ULJ decided that Osman's employment had been terminated for employment misconduct, that she was ineligible for benefits, and that she was liable for $2,784 in overpayment. Osman requested reconsideration and the ULJ affirmed. This certiorari appeal followed.

## DECISION

The purpose of unemployment insurance is to assist those who are unemployed through no fault of their own. Minn. Stat. § 268.03, subd. 1 (2012).[1] The Minnesota Unemployment Insurance Law is remedial in nature and must be applied in favor of awarding benefits, and any provision precluding receipt of benefits must be narrowly construed. Minn. Stat. § 268.031, subd. 2 (2012). There is no burden of proof in unemployment-insurance proceedings. Minn. Stat. § 268.069, subd. 2 (2012). And there is no equitable denial or allowance of benefits. *Id.*, subd. 3 (2012). We may affirm a ULJ's decision or remand the case for further proceedings. Minn. Stat. § 268.105, subd. 7(d) (2012).[2] We may also reverse or modify a ULJ's decision if a relator's substantial rights have been prejudiced because the ULJ's findings, inferences, conclusion, or

_____

[1] The legislature recently amended some of the statutes cited in this opinion, but the amendments have not been codified yet, and some have not gone into effect. This opinion includes footnotes explaining relevant amendments. When an amendment clarifies a law without substantively changing it, the amended statute applies to pending litigation. *Braylock v. Jesson*, 819 N.W.2d 585, 588 (Minn. 2012).
[2] Subdivision 7 was amended effective August 1, 2014, but the amendment did not affect subdivision 7(d). 2014 Minn. Laws ch. 271, art. 1, § 1, at 1028–29.

3

decision are, inter alia, made upon unlawful procedure, affected by an error of law, not based on substantial evidence in the record, or arbitrary or capricious. *Id.*

## I.

An employee who is discharged for employment misconduct is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2012). "Employment misconduct" is "any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." *Id.*, subd. 6(a) (2012).[3] "Whether an employee committed employment misconduct is a mixed question of fact and law." *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). Whether the employee committed a particular act is a question of fact, and whether the act constitutes employment misconduct is a question of law. *Id.* We view a ULJ's findings of fact in the light most favorable to the ULJ's decision and will not disturb the factual findings if the evidence substantially supports them. *Id.* But we review de novo a ULJ's legal conclusion that particular conduct constituted employment misconduct. *Id.*

Two of the ULJ's findings of fact relate to the legal conclusion that Osman's conduct constituted employment misconduct: (1) Osman had received written warnings about a pattern of abusive behavior and (2) "Osman became argumentative and belligerent" during the May 31 meeting. The first finding is supported by the testimony

_____

[3] Subdivision 6 was amended, but the amendment is not effective until October 5, 2014, and did not affect paragraph (a). 2014 Minn. Laws ch. 239, art. 2, § 5, at 772–73.

of Supershuttle's witnesses and by copies of the written warnings. The second finding is supported by the testimony of Supershuttle's witnesses and the written summaries they prepared after the meeting. Supershuttle's witnesses testified that they were considering disciplinary action before the meeting and that their termination decision was based on Osman's pattern of behavior and her belligerent and uncooperative conduct during the meeting. Osman disputed those assertions, testifying that the meeting lasted "less than two minutes" and that she was told she was fired as soon as she entered the room, suggesting that the decision could not have been based on anything that happened during the meeting. Despite Osman's testimony, we conclude that the evidence substantially supports the ULJ's factual findings that Osman had been warned about her conduct and that she was belligerent and abusive during the meeting. We therefore decline to disturb the ULJ's factual findings.

The ULJ's legal conclusion was that "[t]he evidence in this case shows employment misconduct." We agree with that conclusion. Employment misconduct includes intentional conduct that seriously violates standards of behavior an employer may reasonably expect of an employee. Minn. Stat. § 268.095, subd. 6(a)(1) (defining employment misconduct). Osman's actions constitute employment misconduct because an employer may reasonably expect an employee to refrain from belligerent and abusive conduct. The statutory definition of employment misconduct also includes intentional conduct that demonstrates "a substantial lack of concern for the employment." *Id.*, subd. 6(a)(2). Continuing a pattern of behavior after being warned that it could lead to termination demonstrates a substantial lack of concern for the employment.

5

We conclude that the ULJ's factual findings, when viewed in the light most favorable to the decision, support the legal conclusion that Osman's employment was terminated for employment misconduct. The ULJ therefore did not err by deciding that Osman was ineligible for unemployment benefits.

## II.

Osman argues that she was denied a fair hearing because the ULJ did not contact her witnesses and permitted the testimony of the employer's third witness after she joined the meeting in progress. We disagree.

### A. Osman's witnesses

DEED may adopt procedural rules for the hearings it conducts, and those rules need not conform to common-law or statutory rules of evidence and technical rules of procedure. Minn. Stat. § 268.105, subd. 1(b) (2012).[4] Under the rules DEED has adopted, the ULJ "must ensure that relevant facts are clearly and fully developed." Minn. R. 3310.2921 (2013).[5]

Osman identified three witnesses. After an unsuccessful attempt to reach one of them, the ULJ explained that "if there's anybody we can't reach today then I'll decide if they're important and if I decide that they're important . . . then we'll reschedule the hearing and we'll issue a subpoena if we need to." Later, after Osman stated that none of her witnesses had any information about what happened in the May 31 meeting, the ULJ

---

[4] Amendments to subdivision 1(b) did not affect this provision. 2014 Minn. Laws ch. 251, art. 2, § 15, at 862.
[5] An amendment provides that the ULJ "must ensure that *all* relevant facts are clearly and fully developed." 39 Minn. Reg. 153 (Aug. 4, 2014) (emphasis added).

6

declined to try to contact them and explained that the information they might offer about other events would not be relevant to his decision. We conclude that the ULJ did not err by declining to contact Osman's witnesses because rule 3310.2921 only requires the development of relevant facts.

**B.      The operations manager**

Osman asserts that the ULJ "was wrong to allow [Supershuttle] to have [an] additional witness." This assertion apparently refers to the ULJ's decision to permit Supershuttle to bring the operations manager into the hearing although she was not present at the beginning and the parties do not seem to have expected that she would testify. Osman cites no authority governing the calling of witnesses and makes no argument beyond the assertion quoted above.[6] We construe her assertion as an argument that the office manager's testimony was not relevant or should have been barred because Osman was not notified that she would testify.

We reject the relevance argument because the office manager's testimony was directly relevant to the duration and nature of the meeting. DEED's rules require ULJs to "ensure that *relevant* facts are clearly and fully developed." Minn. R. 3310.2921 (emphasis added). We reject the notice argument because the rules do not require

---

[6] We note that we could decline to consider this argument because prejudicial error is not obvious here. *See State v. Modern Recycling, Inc.*, 558 N.W.2d 770, 772 (Minn. App. 1997) (stating that an assignment of error based on a mere assertion unsupported by argument or citation to authority is waived unless prejudicial error is obvious on mere inspection); *State Dep't of Labor and Indus. v. Wintz Parcel Drivers, Inc.*, 558 N.W.2d 480, 480 (Minn. 1997) (applying this rule in an unemployment-insurance setting). We choose to address it nonetheless, to more fully explain our decision.

7

exclusion of unnoticed witnesses under these facts. The remedy the rules provide for late disclosure of a witness's identity is rescheduling of the hearing, which is only required if the opposing party requests it. Minn. R. 3310.2914, subp. 2 (2013). Osman did not request rescheduling.

**III.**

Osman alleges that Supershuttle's witnesses lied during the evidentiary hearing. She does not elaborate, but presumably intends to suggest that the witnesses were not truthful about her conduct during the May 31 meeting or the reasons for the termination decision. We reject this claim because witness credibility is beyond the scope of our review. *Skarhus*, 721 N.W.2d at 345 (stating that "[c]redibility determinations are the exclusive province of the ULJ and will not be disturbed on appeal").

This claim also fails if it is construed as an assertion that the ULJ erred by not stating the grounds for his credibility determinations. "When the credibility of a witness testifying in a hearing has a significant effect on the outcome of a decision, the unemployment law judge must set out the reason for crediting or discrediting that testimony." Minn. Laws ch. 251, art. 2, § 15, at 862 (to be codified at Minn. Stat. § 268.105, subd. 1(d) (2014).[7] The ULJ stated specific reasons for crediting Supershuttle's witnesses: their three accounts of the meeting were consistent with each

---

[7] The quoted session law amended Minn. Stat. § 268.105, subd. 1(c) (2012). The amendment changed the lettering of the paragraphs in subdivision 1 and made nonsubstantive changes to the wording of the former paragraph (c).

other and with written statements they drafted on the day of the meeting.  That explanation satisfies the statutory requirement.

**Affirmed.**