*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1320**

Terrylou Cripe-Scherek,
Relator,

vs.

MNKase LLC,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed December 22, 2014
Affirmed
Cleary, Chief Judge**

Department of Employment and Economic Development
File No. 32541596-3

Terrylou Cripe-Scherek, Milaca, Minnesota (pro se relator)

MNKase, LLC, Fridley, Minnesota (respondent)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Johnson, Presiding Judge; Cleary, Chief Judge; and

Reyes, Judge.

UNPUBLISHED OPINION

**CLEARY**, Chief Judge

Relator Terrylou Cripe-Scherek appeals the decision of an unemployment-law judge (ULJ) that she was ineligible to receive unemployment benefits after quitting her employment. Because Cripe-Scherek did not request an accommodation prior to quitting her employment, we affirm.

## FACTS

Cripe-Scherek worked for MNKase, LLC, d/b/a Fantastic Sams at various times from 2006 until April 27, 2014. The owner of MNKase, LLC hired Cripe-Scherek to manage a Fantastic Sams salon owned by MNKase, LLC. As salon manager, Cripe-Scherek was responsible for all of the day-to-day operations of the salon, including hiring and firing employees. On April 6, 2014, Cripe-Scherek was diagnosed with deep vein thrombosis (DVT), a condition causing a blood clot to form in her leg. Cripe-Scherek continued working until April 9, 2014, when she went on maternity leave. She had originally planned to return to work at the end of April 2014. However, because of her DVT diagnosis, her physician required her to be seated 90 percent of her workday.

Cripe-Scherek and her assistant manager discussed the fact that she could not continue performing her job—or any other job at Fantastic Sams—if she had to be seated 90 percent of the day. As a result, Cripe-Scherek quit her employment with MNKase, LLC, on April 27, 2014. In the conversation in which Cripe-Scherek quit, she told the owner that she was quitting because "her doctor put her on restrictions and she wasn't

able to work." Cripe-Scherek did not ask the owner for additional leave or any other accommodation.

Cripe-Scherek applied for unemployment benefits and a determination of ineligibility was issued on May 21, 2014. She then appealed the determination. The ULJ held an evidentiary hearing via conference call on June 17, 2014. At the hearing, Cripe-Scherek testified that she quit her job, that the only reason she quit her job was for medical restrictions, and that she had not asked the owner for any accommodations prior to quitting her job.

The ULJ affirmed Cripe-Scherek's determination of ineligibility on June 18, 2014. In doing so, the ULJ found that she "quit her employment because she was medically unable to perform her job." Cripe-Scherek filed for reconsideration that same day. As part of her petition for reconsideration, Cripe-Scherek submitted two personal statements, one of which raised the legal-compliance issues she raises in her appeal here. The ULJ again affirmed the determination of ineligibility on July 18, 2014. This certiorari appeal followed.

## DECISION

Cripe-Scherek brings a certiorari appeal from the ULJ's decision that she is ineligible for unemployment benefits because she quit her employment with MNKase, LLC. This court reviews a ULJ's decision to deny unemployment benefits to determine whether the findings, inferences, conclusions, or decision are in violation of constitutional provisions, in excess of statutory authority, made upon unlawful procedure, affected by an error of law, unsupported by substantial evidence, or arbitrary and

3

capricious. 2014 Minn. Laws ch. 271, art. 1, § 1, at 1028-29 (to be codified at Minn. Stat. § 268.105, subd. 7(d)). The ULJ's factual findings are viewed in the light most favorable to the decision being reviewed, and this court defers to the ULJ's credibility determinations. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). We review questions of law de novo, including the question of whether the ULJ's findings establish that the applicant falls within a statutory exception to ineligibility. *See, e.g., Nichols v. Reliant Eng'g & Mfg., Inc.*, 720 N.W.2d 590, 594-95 (Minn. App. 2006) (holding that the determination that one of the exceptions under Minn. Stat. § 268.095, subd. 1 did not apply is a legal conclusion).

The purpose of the Minnesota Unemployment Insurance Law is to assist those who are "unemployed through no fault of their own." Minn. Stat. § 268.03, subd. 1 (2012). The law is "remedial in nature and must be applied in favor of awarding unemployment benefits," and any statutory provision precluding receipt of benefits must be narrowly construed. Minn. Stat. § 268.031, subd. 2 (2012). There is no burden of proof in unemployment-insurance proceedings. Minn. Stat. § 268.069, subd. 2 (2012). Nor is there equitable denial or allowance of benefits. *Id.*, subd. 3.

An employee who quits employment is generally ineligible for unemployment benefits. 2014 Minn. Laws ch. 239, art. 2, § 4, at 771 (to be codified at Minn. Stat. § 268.095, subd. 1). "A quit from employment occurs when the decision to end the employment was, at the time the employment ended, the employee's." 2014 Minn. Laws ch. 251, art. 2, § 14, at 861 (to be codified at Minn. Stat. § 268.095, subd. 2(a)). An employee who quits employment is eligible for benefits if the employee quit because of

4

one of the exceptions listed in Minn. Stat. § 268.095, subd. 1. Here, it is undisputed that Cripe-Scherek quit her employment. Cripe-Scherek challenges the ULJ's conclusion that none of the exceptions in Minn. Stat. § 268.095, subd. 1 apply to her case.

## I. Did Cripe-Scherek qualify for the medical-necessity exception?

One exception to the disallowance of unemployment benefits is where a "serious illness or injury made it medically necessary that the applicant quit." 2014 Minn. Laws ch. 239, art. 2, § 4, at 771 (to be codified at Minn. Stat. § 268.095, subd. 1(7)). An applicant can only qualify for this exception if (1) the applicant informed the employer about the medical problem, (2) the applicant requested an accommodation, and (3) no reasonable accommodation was made available. *Id.*

Cripe-Scherek informed the owner about her illness prior to quitting. However, the ULJ found that Cripe-Scherek did not request an accommodation from the owner. Cripe-Scherek's pro se brief could be construed as raising two arguments on appeal that could allow her to satisfy the requirements of the medical-necessity exception, despite not having asked the owner for an accommodation.

First, Cripe-Scherek emphasizes that she had a good reason for not requesting accommodation from the owner. Cripe-Scherek points out that the owner stated at the hearing that he would not have granted Cripe-Scherek a leave of absence, considering the fact that her illness-related absence had no projected end date and it was unclear when she would be able to return to work. Because part of Cripe-Scherek's job description was hiring, firing, and considering accommodations for employees, she asserts that she knew

5

that the owner would be unable to provide accommodations and that asking for accommodations would be futile.

Minn. Stat. § 268.095, subd. 1(7) clearly states that a request for accommodation is a prerequisite to the application of the medical-necessity exception. The statute does not leave room for a reasonableness exception to the accommodation-request requirement. Nor have any published cases in Minnesota under the current statute recognized such an exception.[1]

Second, Cripe-Scherek points out that she "follow[ed] the proper chain of command" in leaving her job. Cripe-Scherek's point about the proper chain of command could be interpreted as an argument that she did, in fact, request an accommodation during her conversation with her assistant manager regarding her work limitations. However, the medical-necessity exception requires that the request for accommodation be made of the "employer." 2014 Minn. Laws ch. 239, art. 2, § 4, at 771 (to be codified at Minn. Stat. § 268.095, subd. 1(7)). Cripe-Scherek's assistant manager was her subordinate, not her employer. Regardless of whether Cripe-Scherek discussed accommodation options with her assistant manager and followed the termination

---

[1] The previous version of the statute required only that the applicant "made reasonable efforts to remain in employment in spite of the serious illness or injury." Minn. Stat. § 268.095, subd. 1(7) (2000). Under that version of the statute, *Madsen v. Adam Corp.* held that discussion of alternate positions with the employee's supervisor satisfied the statutory requirement of "reasonable efforts to remain in[ ]employment." 647 N.W.2d 35, 38 (Minn. App. 2002). However, in the amendments that resulted in the current version of the statute, the legislature removed the "reasonable efforts" language and made the accommodation request an explicit statutory requirement. Because our decision in *Madsen* turned on language no longer included in the statute, *Madsen* does not apply here.

procedure that would be proper for other employees at the salon, the ULJ found that Cripe-Scherek did not request an accommodation from the owner, her employer. This court defers to the ULJ's credibility determinations and will not overturn a ULJ's findings unless they are unsupported by evidence in the record. *Skarhus*, 721 N.W.2d at 344. Cripe-Scherek and the owner both testified in the June 17 hearing that Cripe-Scherek did not ask the owner for an accommodation. The ULJ's finding is therefore supported by the evidence in the record.

Because Cripe-Scherek did not request an accommodation from her employer, even if she had good reason for deciding not to do so, she did not meet all of the requirements of the medical-necessity exception. The ULJ did not err in refusing to apply the medical-necessity exception to Cripe-Scherek's situation.

## II. Did Cripe-Scherek qualify for the good-reason exception?

Cripe-Scherek argues that another reason she quit, beyond her medical limitations, was "to remain in accordance with Minnesota State laws." She maintains that, if she had remained as the designated salon manager while on leave of absence, she would have violated Minn. Stat. § 155A.29, subd. 2(a)(2), and could have been held personally liable for penalties for any statutorily defined violations that occurred at the salon while she was on leave of absence. This argument only helps Cripe-Scherek's case if it means that another exception under Minn. Stat. § 268.095, subd. 1 applies to her claim. In her statement to the ULJ explaining her request for reconsideration, Cripe-Scherek argued that her belief that she would be breaking the law if she took a leave of absence constituted a "good reason as caused by employer," which is one of the exceptions under

7

Minn. Stat. § 268.095, subd. 1. Cripe-Scherek seems to have intended to make the same argument before this court.

As a threshold matter for applying the good-reason exception, Cripe-Scherek's legal-compliance concern must have been one of the reasons that she quit her employment. 2014 Minn. Laws ch. 239, art. 2, § 4, at 771 (to be codified at Minn. Stat. § 268.095, subd. 1(1)) (requiring that the employee quit "because of" the good reason). The employee's reason for quitting is a fact determination for the ULJ. *See Beyer v. Heavy Duty Air, Inc.*, 393 N.W.2d 380, 382 (Minn. App. 1986) (reviewing as factual finding ULJ's determination of reason for employee's quit). The ULJ found that Cripe-Scherek's only reason for quitting her employment was "because she was medically unable to perform her job." The record supports this conclusion: Cripe-Scherek testified at the June 17 hearing that there were absolutely no other reasons than "medical restriction" for her to quit her job. Cripe-Scherek did not quit because of her interest in not violating Minnesota law. Therefore, the good-reason exception in Minn. Stat. § 268.095, subd. 1(1) does not apply to her claim.

We acknowledge the seemingly inequitable result of this decision. Cripe-Scherek unfortunately failed to qualify for unemployment benefits because she did not explicitly request accommodations from her employer, which appears to be a mere technicality under the facts of Cripe-Scherek's situation. However, we are not entitled to make equitable exceptions to the statutory requirements for unemployment benefits. *See* Minn. Stat. § 268.069, subd. 3 (precluding equitable allowance of benefits). Although we are sympathetic to Cripe-Scherek's situation, we affirm the ULJ's decision because she did

not meet the statutory requirements for any of the exceptions under Minn. Stat. § 268.095, subd. 1.

**Affirmed.**