*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1075**

Michael McCalister,
Relator,

vs.

The Fresh Group Ltd. - Maglio & Company,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed February 23, 2015
Affirmed
Chutich, Judge**

Department of Employment and Economic Development
File No. 32407048-4

Michael McCalister, St. Paul, Minnesota (pro se relator)

The Fresh Group Ltd. - Maglio & Company, Gurnee, Illinois (respondent employer)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent Department)

        Considered and decided by Rodenberg, Presiding Judge; Chutich, Judge; and Toussaint, Judge.[*]

_____

[*]  Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**CHUTICH**, Judge

Relator Michael McCalister challenges the denial of his claim for unemployment benefits, arguing that the unemployment-law judge erred in determining that he was discharged for employment misconduct. Because sufficient evidence exists to support the decision, we affirm.

## FACTS

In March 2014, the Fresh Group Ltd. – Maglio & Company, a produce wholesaler, discharged relator Michael McCalister from his position as line leader. While McCalister was working on filling orders that day, a supervisor asked him for a count of a tomato order. Rather than answer the question, McCalister instead yelled that he needed water and began walking off the production floor. As he neared the door, the operations manager told McCalister to tell the supervisor the count before getting water. McCalister did not respond and walked out.

After McCalister returned, the operations manager found him talking on his cell phone, which is not permitted on the production floor. The operations manager told McCalister not to talk on the phone and to get back to work. Shortly thereafter, the operations manager again saw McCalister talking on his cell phone. Later that day, the operations manager discharged McCalister.

McCalister applied for unemployment benefits, and the Minnesota Department of Employment and Economic Development (the department) determined that he was ineligible for benefits because his insubordination and actions were employment

misconduct.  McCalister appealed this decision, and an evidentiary hearing was held in May 2014 via telephone conference.

The unemployment-law judge affirmed the denial of benefits.  The unemployment-law judge also found that McCalister ignored the instructions of his supervisors, violated the policy against cell phone use on the production floor, and then repeated that same violation less than an hour after being admonished for that behavior.  The unemployment-law judge found that this disregard for the rules demonstrated a substantial lack of concern for McCalister's employment, meeting the definition of misconduct and making him ineligible for unemployment benefits.

McCalister requested reconsideration, arguing that extenuating circumstances existed because he was talking on the phone to his wife about dinner plans and to his brother about their sick father.  The unemployment-law judge affirmed the decision.  This appeal by a writ of certiorari follows.

**D E C I S I O N**

On review, this court may affirm the unemployment-law judge's decision, remand it for further proceedings, or reverse or modify the decision if the substantial rights of the relator have been prejudiced because the findings, inferences, conclusion, or decision is "(1) in violation of constitutional provisions; (2) in excess of the statutory authority or jurisdiction of the department; (3) made upon unlawful procedure; (4) affected by other error of law; (5) unsupported by substantial evidence in view of the entire record as submitted; or (6) arbitrary or capricious."  Minn. Stat. § 268.105, subd. 7(d) (2014).  This chapter is remedial in nature and we apply it in favor of awarding unemployment

benefits, narrowly construing any provision that would preclude an applicant from receiving them. Minn. Stat. § 268.031, subd. 2 (2014).

An employee who is discharged for misconduct is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2014). Employment misconduct is defined as "any intentional, negligent, or indifferent conduct . . . that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." *Id.*, subd. 6(a) (2014). An employee's refusal to abide by an employer's reasonable policies and requests amounts to disqualifying misconduct. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 806 (Minn. 2002). "This is particularly true when there are multiple violations of the same rule involving warnings or progressive discipline." *Id.* at 806-07.

Employment misconduct presents a mixed question of fact and law: whether an employee committed a particular act is a question of fact, and whether that act arises to employment misconduct is a question of law. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). An unemployment-law judge's findings of fact are viewed in the light most favorable to the decision, and those findings will not be disturbed so long as substantial evidence supports them. *Id.*; *see also* Minn. Stat. § 268.105, subd. 7(d)(5) (stating that this court may reverse or modify an unemployment-law judge's decision if the facts are unsupported by substantial evidence). An unemployment-law judge's determination that an applicant is ineligible for employment benefits is subject to de novo review. *Stassen v. Lone Mountain Truck Leasing, LLC*, 814 N.W.2d 25, 30 (Minn. App. 2012).

McCalister first argues that his actions were not misconduct because he was permitted to have his phone with him, and designated areas existed where cell phones could be used. The operations manager, however, testified that cell phones were not permitted on the floor. He also testified that the company had no policy about a designated cell phone area, and that employees mistakenly thought that "they could walk away from other employees so they wouldn't see them on the phones so that they could use the phones."

The unemployment-law judge found that McCalister violated the company's policy by having his phone on the production line and that the operations manager reminded McCalister of this policy after his first warning. Although McCalister testified that the operations manager said that it was "okay" that he used his phone the first time, the operations manager clarified that he also told McCalister that he was not to use his phone again. Because substantial evidence exists to support this finding, we will not disturb it. *See Skarhus*, 721 N.W.2d at 344.

We also agree with the department that McCalister's actions were misconduct. An employee's "refus[al] to abide by an employer's reasonable policies and requests amounts to disqualifying misconduct." *Schmidgall*, 644 N.W.2d at 804. Here, even though specifically asked, McCalister would not tell either his supervisor or the operations manager what the count of tomatoes was. He also used his cell phone despite the Fresh Group's policy that phones are not to be used on the production floor. These actions demonstrate a refusal to abide by the Fresh Group's reasonable policies and requests. After he was told not to use his phone, McCalister violated this policy again

5

roughly thirty minutes later. Because knowingly violating a reasonable policy is misconduct, particularly when there are multiple violations of the same rule after a warning, the unemployment-law judge did not err in determining that McCalister's actions represented misconduct. *See id.* at 806.

McCalister also claims that he was discharged because the operations manager chose to take out his bad day on McCalister. No evidence exists to support this claim, and substantial evidence supports the unemployment-law judge's findings. We therefore will not disturb those findings. *See Skarhus*, 721 N.W.2d at 344.

**Affirmed.**