*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2066**

Travis Hern,
Relator,

vs.

Massage Retreat & Spa,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed August 24, 2015
Affirmed
Hooten, Judge**

Department of Employment and Economic Development
File Nos. 32808144-3, 32602347-3

Travis Hern, Hudson, Wisconsin (pro se relator)

Massage Retreat & Spa, San Dimas, California (respondent employer)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

        Considered and decided by Reilly, Presiding Judge; Hooten, Judge; and Willis, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HOOTEN**, Judge

Relator challenges the decisions of an unemployment law judge (ULJ), arguing that he did not fraudulently underreport his earnings. We affirm.

## FACTS

Relator Travis Hern established an unemployment-benefit account with respondent Minnesota Department of Employment and Economic Development (DEED) on November 24, 2013. His weekly benefit amount was $276. Hern began working for respondent Massage Retreat & Spa (MRS) in December 2013. While employed with MRS, Hern gave massages and was paid $17 per hour, plus tips.

In May 2014, DEED performed an audit of Hern's earnings from November 24, 2013, to May 17, 2014. In August 2014, DEED issued a determination of ineligibility and a determination of fraud, finding that Hern had underreported his earnings from December 22, 2013 to May 3, 2014, and had committed fraud. The determinations indicated that Hern would need to repay the unemployment benefits he was overpaid and that a fraud penalty would be assessed. Hern filed a timely appeal of both the ineligibility determination and the fraud determination.

In September 2014, a ULJ conducted a telephonic evidentiary hearing on both determinations. Both Hern and MRS appeared pro se. At the outset of the hearing, the ULJ identified two issues: whether the earnings reported by MRS were accurate and whether Hern had engaged in fraud. MRS had previously submitted a spreadsheet of Hern's earnings during the period in question, which the ULJ received into evidence.

The spreadsheet covered the relevant time period and showed the hours Hern worked and his wages, tips, and total gross earnings. The ULJ asked Hern whether these earnings were accurate, and Hern replied that they were "pretty close." Hern clarified that "in the beginning" of his employment with MRS, he was "probably" making "$50 less." But, he did not have any documentary evidence to dispute the figures submitted by MRS.

In all but one of the weeks in question, Hern reported to DEED that he had weekly earnings of $108, even though the documents submitted by MRS indicated that he actually earned more than that. For most of the weeks in question, he earned between $325 and $425 per week in hourly wages and tips. Hourly wages constituted the majority of these earnings. In the May 2014 audit form, Hern had the opportunity to correct his reported earnings, but did not do so; he instead indicated that the reported earnings were correct.

At the hearing, Hern gave the following explanation for his underreporting. Shortly after he started working at MRS, he called DEED's customer service center to ask how he should report his earnings because, while he was now employed, he "wasn't making enough to pay [his] expenses and to live." He told the customer service representative that he made $17 per hour and was working 15 hours per week. The representative allegedly told him to calculate his earnings using minimum wage and 15 hours per week, which resulted in the $108 figure. The representative also allegedly told him not to report his cash tips because tips did not need to be reported to DEED.

Hern acknowledged that he received an information handbook from DEED when he established his benefits account in November 2013. When asked whether he had read

3

the handbook, Hern replied, "I skimmed it. I mean, I wasn't in-depth with it." He explained that reading was difficult for him because he is dyslexic, which is why he called the DEED representative to ask questions. The handbook states, "Each time you request a benefit payment, you are asked if you worked during the week you are requesting [benefits]. . . . If you worked, you must report any hours worked and earnings from all work every week you request benefits. *There are no exceptions.*" According to the handbook, benefits recipients are required to report total hours worked per week and total gross earnings per week, which include "wages, tips, salary, commission, [and] cash."

Hern admitted that 15 hours was only a rough estimate of how much he worked each week. The spreadsheet of Hern's actual earnings indicated that he worked more than 15 hours during most of the weeks in question. He admitted that he calculated his weekly earnings by using minimum wage, rather than his actual salary, and did not report his tips. Acknowledging that he knew he would receive fewer benefits if he reported more earnings, Hern admitted that he underreported his earnings. Hern stated that he realized he "was overpaid" and would "take responsibility for that," but he denied committing fraud.

After the hearing, the ULJ issued his decisions. The ULJ found that Hern owed $4,177 for overpayment of unemployment benefits. The ULJ found that Hern earned more than his weekly benefit of $276 from December 22, 2013, to April 19, 2014, and he was therefore ineligible for benefits during this time period. And, the ULJ found that

4

Hern earned more than $108 but less than $276 from April 20 to May 3, 2014, and he was therefore eligible for fewer benefits than he received during this time period.

The ULJ also found that Hern had committed fraud because he falsely represented his earnings without a "good faith belief" that his reporting was correct. The ULJ found that Hern's testimony that a DEED customer service representative advised him to not report tips was not credible, reasoning that it was unlikely that a representative would give this incorrect advice because "it is well settled that tips are to be reported when requesting benefits." Moreover, this requirement was "clearly stated in the handbook." The ULJ found that Hern did not have a good faith belief that his reporting was correct because he did not read the handbook. The ULJ found that, even under the representative's supposed instructions, Hern still underreported his earnings because he worked more than 15 hours during many of the weeks in question.

Hern timely requested reconsideration, arguing that he had read the handbook but that it was difficult for him to comprehend what he had read because of his disability. He claimed that he had called DEED so that he could "better understand what [he] should do," asserting that he did not engage in fraud and that the representative "lied" to him. The ULJ affirmed his decisions, noting that Hern had already made these arguments at the hearing. The ULJ stated that it was "highly unlikely that a customer service representative would instruct [Hern] to omit" tips. The ULJ noted that Hern's "earnings were not disputed." This certiorari appeal followed.

5

**D E C I S I O N**

We review a ULJ's decision to determine whether the relator's substantial rights have been prejudiced by legal errors, findings or conclusions not supported by substantial evidence, or a decision that is arbitrary and capricious. 2015 Minn. Laws 1st Spec. Sess. ch. 1, art. 6, § 12 (to be codified at Minn. Stat. § 268.105, subd. 7(d)(4)–(6) (Supp. 2015)).[1] We view the ULJ's findings of fact in the light most favorable to the decision and give deference to the ULJ's credibility determinations. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006).

"Any applicant who receives unemployment benefits by knowingly misrepresenting, misstating, or failing to disclose any material fact, or who makes a false statement or representation without a good faith belief as to the correctness of the statement or representation, has committed fraud." Minn. Stat. § 268.18, subd. 2(a) (2014). The statute requires the applicant to repay unemployment benefits obtained by fraud and imposes a mandatory penalty in the amount of 40% of any benefits fraudulently obtained. *Id.* A determination of whether an applicant fraudulently obtained unemployment benefits largely turns on the credibility of the applicant's testimony, as determined by the ULJ. *See Burnevik v. Dep't of Econ. Sec.*, 367 N.W.2d 681, 683 (Minn. App. 1985).

On appeal, Hern challenges only the ULJ's decision that he engaged in fraud. Hern argues that he did not commit fraud because he reasonably relied on the customer

---

[1] The 2015 amendment affected only subdivision 7(a). We apply the amended version of subdivision 7(d) because the amendment did not make any substantive changes to that subsection. *Braylock v. Jesson*, 819 N.W.2d 585, 588 (Minn. 2012).

6

service representative's advice about how he should report his earnings. The ULJ found that Hern's testimony lacked credibility. In general, "[c]redibility determinations are the exclusive province of the ULJ and will not be disturbed on appeal." *Skarhus*, 721 N.W.2d at 345. But, "[w]hen the credibility of a witness testifying in a hearing has a significant effect on the outcome of a decision, the unemployment law judge must set out the reason for crediting or discrediting that testimony." Minn. Stat. § 268.105, subd. 1a(a) (2014).

The ULJ found that Hern's testimony was not credible because it was "highly unlikely" that a customer service representative would give Hern such incorrect advice, pointing to the handbook's unambiguous requirement that all gross earnings, including tips, must be reported. The ULJ also found that, even under the representative's supposed advice, Hern underreported his earnings. We conclude that the ULJ set out reasons for its credibility determinations, as required by statute, and we will not disturb those determinations. Moreover, the fact that Hern calculated his weekly earnings using minimum wage, rather than his actual hourly rate, further undercuts his argument that he had a good faith belief that he correctly reported his earnings.

Hern claims that he has a reading disability, which is why he could not understand the information in the handbook. The ULJ implicitly found that Hern's testimony as to his reading disability was not credible. We note that Hern could have had someone else read or explain the handbook to him.

The only issue in this case is whether Hern had a "good faith belief as to the correctness" of his reported earnings. Minn. Stat. § 268.18, subd. 2(a). The ULJ did not

believe Hern's explanations as to why he misreported his earnings and found that Hern did not have a good faith belief. Hern asks this court to reassess the credibility of his testimony, but that is not the province of this court. *Skarhus*, 721 N.W.2d at 345. His argument is essentially an equitable one, but "[t]here is no equitable . . . denial or allowance of unemployment benefits." Minn. Stat. § 268.069, subd. 3 (2014). Substantial evidence supports the ULJ's decision that Hern engaged in fraud.

**Affirmed.**