*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0053**

Ahmed Ghanim,
Relator,

vs.

FedEx Kinko's Office and Print Services, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed August 31, 2015
Affirmed
Chutich, Judge**

Department of Employment and Economic Development
File No. 32906447-4

Ahmed Ghanim, Minneapolis, Minnesota (pro se relator)

FedEx Kinko's Office and Print Services, Inc., St. Louis, Missouri (respondent employer)

Lee B. Nelson, Timothy C. Schepers, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Larkin, Presiding Judge; Chutich, Judge; and

Klaphake, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**CHUTICH**, Judge

Relator Ahmed Ghanim challenges the unemployment-law judge's determination that he was ineligible for benefits because he was not actively seeking suitable employment. Because substantial evidence in the record supports the unemployment-law judge's determination, we affirm.

## FACTS

On December 16, 2013, Ghanim began working full-time as a center consultant for FedEx Kinko's. He quit on September 20, 2014, and filed for unemployment benefits the next day. On October 7, 2014, the Minnesota Department of Employment and Economic Development (the department) issued a determination of ineligibility.

Ghanim appealed the determination of ineligibility. On November 4, 2014, an unemployment-law judge held an evidentiary hearing. Ghanim was the only witness to testify. Ghanim testified that he quit because the job was too physically and mentally demanding. It was too physically demanding because he had to remain on his feet eight hours a day and lift packages that weighed more than 100 pounds. Although he could lift the heavy packages, he testified that it caused him back pain and sometimes pain in his hand. Ghanim also said that the job was too mentally demanding because he had to deal with "really fast pace multitasking issues" and could not "work under that kind of pressure."

Ghanim did not visit a medical professional before he quit. When the unemployment-law judge asked Ghanim if he had seen a doctor, Ghanim replied that he

2

had not scheduled an appointment because a physical examination would cost him at least $500.

Ghanim further testified that he searched for a new job after he quit and that he wanted to find work in a customer-service field because he thought these jobs would not be mentally or physically strenuous. Ghanim looked for jobs online and in area job flyers. He also went to a local workforce center but did not register with a staffing service or job recruiter. Ghanim estimated that he had applied to 10 or 12 jobs over a six-week period after becoming unemployed.

Ghanim testified that he has a bachelor's degree in information technology from his home country of Iraq. He said that American companies would not accept his degree unless it was recertified, and he was not planning to recertify it.

The unemployment-law judge noted that Ghanim's testimony was credible because it was "detailed, specific, and not always favorable to him." Based on Ghanim's testimony, the unemployment-law judge determined that he was ineligible for benefits because, although he was available for suitable employment, he was not actively seeking it. The judge determined that Ghanim was not actively seeking suitable employment because he had not demonstrated a reasonable and diligent job search and had placed significant restrictions on his job search.

Ghanim requested reconsideration, arguing that he had applied to almost all of the retail openings in the Twin Cities. He further asserted that the stores had rejected his application because he was unwilling to lift more than 50 pounds. He also argued that he

had applied to information-technology positions in his field and was rejected because of his foreign degree.

The unemployment-law judge denied Ghanim's request for reconsideration, concluding that it was "highly unlikely that Ghanim has applied to even a fraction of the jobs" available in the metropolitan area and, even if he had, it was unlikely that employers had rejected his application because of his lifting restrictions. Ghanim appealed by writ of certiorari.[1]

## D E C I S I O N

The purpose of the Minnesota Unemployment Insurance Program is to assist those who become unemployed through no fault of their own. Minn. Stat. § 268.03, subd. 1 (2014). Chapter 268 "is remedial in nature and must be applied in favor of awarding unemployment benefits." Minn. Stat. § 268.031, subd. 2 (2014). Any provision precluding an applicant from benefits must be narrowly construed. *Id.*

On review, we may affirm the decision of an unemployment-law judge or remand the case for further proceedings; we may also reverse or modify the decision if the substantial rights of the relator have been prejudiced because the findings, inferences, conclusion, or decision is affected by an error of law or unsupported by substantial evidence in view of the record as a whole. Minn. Stat. § 268.105, subd. 7(d) (2014).

---

[1] In an earlier appeal under these same facts, Ghanim had challenged an unemployment-law judge's determination that he was ineligible to receive unemployment benefits because he quit his job at FedEx Kinko's without a good reason caused by his employer. *Ghanim v. FedEx Kinko's Office & Print Servs., Inc.*, No. A14-2092, 2015 WL 2457018 (Minn. App. May 26, 2015), *review denied* (Minn. July 21, 2015). We affirmed, *id.* at *1, and the supreme court denied his petition for further review.

The unemployment-law judge concluded that Ghanim was available for suitable employment but that he was not actively seeking suitable employment. Whether a person is available for suitable employment and actively seeking suitable employment are questions of fact. *Neumann v. Dep't of Emp't & Econ. Dev.*, 844 N.W.2d 736, 738-39 (Minn. App. 2014). We review factual findings in the light most favorable to the decision and defer to the unemployment-law judge's credibility determinations. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). We will reverse only if the factual findings are unsupported by substantial evidence in the record. *Id.* "But we review the [unemployment-law judge's] ineligibility determination de novo, construing narrowly statutory bases to disqualify applicants." *Neumann*, 844 N.W.2d at 738.

To receive unemployment benefits, an applicant must be available for suitable employment and actively seeking suitable employment. Minn. Stat. § 268.085, subd. 1(4), (5) (2014). An applicant who is "ready, willing, and able to accept suitable employment" is considered available for suitable employment. *Id.*, subd. 15(a) (2014). "'Actively seeking suitable employment' means those reasonable, diligent efforts an individual in similar circumstances would make if genuinely interested in obtaining suitable employment under the existing conditions in the labor market area." *Id.*, subd. 16(a) (2014).

Ghanim argues that substantial evidence does not support the unemployment-law judge's finding that he was not actively seeking suitable employment. We disagree.

The unemployment-law judge first concluded that Ghanim was not actively seeking suitable employment because his job search was not reasonable or diligent. Substantial evidence in the record supports this determination.

Ghanim testified that he was searching for customer service jobs in the Twin Cities area and had applied for two jobs per week. He also testified that he had visited a local workforce center yet had not applied with a staffing service or job recruiter. In some circumstances, applying for two jobs per week may be enough to show that a person was actively seeking employment. But to obtain unemployment benefits, a person is required to use reasonable, diligent efforts as "an individual in *similar* circumstances would make if *genuinely* interested in obtaining suitable employment." *Id.* (emphasis added). Applying to only two customer-service employers per week in the metropolitan area is not a reasonable and diligent work search for a person who is genuinely interested in obtaining suitable employment.

In his request for reconsideration, Ghanim argued that he had "applied to almost all retail stores in the metro area." This statement contradicted his earlier sworn testimony in which he said that he had applied to 10 or 12 employers over the six-week period. In denying Ghanim's request for reconsideration, the unemployment-law judge concluded that this statement was not credible. Faced with Ghanim's new assertion that he had applied to a vastly expanded pool of stores and his previous sworn testimony, the unemployment-law judge determined that his earlier testimony was more credible. We defer to the unemployment-law judge's credibility findings. *Skarhus*, 721 N.W.2d at 344.

The unemployment-law judge also concluded that Ghanim was not actively seeking suitable employment because he had placed "significant restrictions" on his job search. Substantial evidence supports this determination as well. For instance, Ghanim stated in his brief that he could not apply for a job at Panera because it required doing several things at one time. By imposing this restriction, Ghanim artificially limited the field of suitable jobs to which he could apply. *See* Minn. Stat. § 268.085, subd. 15(a) (stating that, other than a restriction on availability, an applicant cannot place self-imposed restrictions that prevent the applicant from accepting suitable employment). Ghanim also refused to apply for jobs requiring heavy lifting because of his experience at FedEx Kinko's. But nothing in the record suggested that available customer-service positions required heavy lifting.

Finally, Ghanim asserts that the unemployment-law judge asked him for "proof of [his] job applications" and argues that he could not provide proof because his applications were all online. The record, however, shows that the unemployment-law judge credited Ghanim's original testimony that he had applied for 10 or 12 jobs without requiring that Ghanim provide physical proof of those applications. Accordingly, this argument fails.

**Affirmed.**