*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0094

Randy Paulzine,
Relator,

vs.

Charter Communications, LLC,
Respondent,

Minnesota Department of Employment and Economic Development,
Respondent.

**Filed September 12, 2016**
**Affirmed**
**Peterson, Judge**

Department of Employment and Economic Development
File No. 33862933-3

Randy R. Paulzine, St. Cloud, Minnesota (pro se relator)

Charter Communications, LLC, St. Louis, Missouri (respondent employer)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Rodenberg, Presiding Judge; Peterson, Judge; and Bjorkman, Judge.

**UNPUBLISHED OPINION**

**PETERSON**, Judge

Relator challenges the decision of an unemployment-law judge (ULJ) that, because he voluntarily quit his employment without a good reason caused by his employer, he is ineligible to receive unemployment benefits. We affirm.

**FACTS**

Relator Randy Paulzine worked as a broadband technician for respondent Charter Communications LLC (Charter) from April 24, 2014, until he quit on July 1, 2015. Before he quit, relator informed Charter in an e-mail that he was "not able to continue working with Charter" because "[a] sudden moving situation is demanding all my focus and forcing me to put my efforts into finding work elsewhere." Relator later testified at the evidentiary hearing before the ULJ that he needed to move because his grandmother, with whom he had been living, sold her house.

Following his quit, relator filed a claim for unemployment benefits with respondent Minnesota Department of Employment and Economic Development (DEED), and DEED determined that relator was ineligible to receive benefits. Although relator alleged that he quit because of unsafe working conditions, DEED determined that "[t]he evidence does not show that [relator] complained to [Charter] about the conditions."

Relator appealed, and an evidentiary hearing was held before a ULJ. The ULJ heard testimony from relator and Jason Habiger, a technical service supervisor for Charter who was relator's immediate supervisor. Both parties agreed that relator quit his employment, and relator testified that he quit for two reasons: his move and unsafe working conditions.

2

Relator testified that he was asked to work at "multiple" job sites where power lines were too close to Charter's lines and that Charter's lines and power lines were actually less than a foot apart in some instances, although they were required to be at least two feet apart.

Relator testified that in late 2014 or early 2015, when he was working in Watertown, he encountered power lines that were too close to where he was supposed to work. He complained about this to Habiger, and Habiger assigned another employee to do the work. Relator said that Charter failed to correct similar safety hazards, which he had observed at work sites in Big Lake, Watertown, and Elk River. Relator submitted a photograph that purportedly showed power lines that were too close to a Charter line in Big Lake. But relator admitted that he had not submitted the Big Lake photograph to Habiger and that he complained to Habiger only about the Watertown work site. He also testified that he was concerned about faulty voltage detectors that gave false positive readings, so that he was encouraged to use the back of his hand, smell the air, or listen for buzzing to determine whether stray voltage was in the Charter lines.

Regarding Charter's response to safety concerns, relator testified that Charter "went to great lengths to make sure that safety was number one." Relator said that Charter provided new batteries for voltage detectors, but the detectors continued to have problems. He also said that Charter should have moved lines that were too close to power lines, but Charter did not do so. In addition to his testimony about unsafe working conditions, relator testified that, because of his slow pace at work, he believed that he could possibly be fired if he "didn't pick up the pace."

Habiger testified that, in one instance, relator expressed concern to him about a work site. With regard to that incident, Habiger testified that he directed a senior technician to go to the work site, and the technician found no safety violations. Habiger denied relator's claim that it was company policy for employees to test for voltage with the backs of their hands; he stated that "no part of your body should be used as a testing device." He said that Charter routinely contacted power companies when voltage detectors gave positive readings. He also said that the two-foot distance between power lines and Charter's lines was a Charter specification, but not a national electrical code specification, and that it was a "rare instance" when the distance between lines was less than two feet. Habiger said that relator had performance and attendance issues that he had been meeting with relator for three or four months to correct, but relator was not at risk of discharge when he quit his employment.

The ULJ rejected relator's claim that he quit his job because of unsafe working conditions and found that relator quit because he was moving. The ULJ determined that, because relator quit his job, he was ineligible for unemployment benefits, and no exception to ineligibility applied. The ULJ affirmed this decision on relator's motion for reconsideration, and this certiorari appeal followed.

**DECISION**

Relator argues that, because he complained to Charter about unsafe working conditions and his complaint was not adequately investigated or taken seriously, his working conditions would compel an average, reasonable worker to quit and become

4

unemployed, rather than remaining in the employment. Therefore, relator contends, the ULJ erred in determining that he is ineligible to receive unemployment benefits.

"We review de novo a ULJ's determination that an applicant is ineligible for unemployment benefits." *Fay v. Dep't of Emp't & Econ. Dev.*, 860 N.W.2d 385, 387 (Minn. App. 2015) (quotation omitted). "[W]e review findings of fact in the light most favorable to the ULJ's decision and will rely on findings that are substantially supported by the record." *Id*. (quotation omitted). We defer to the ULJ's credibility determinations. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). The reason why an employee quit is a question of fact. *See Beyer v. Heavy Duty Air, Inc.*, 393 N.W.2d 380, 382 (Minn. App. 1986).

Generally, a person who quits employment "is ineligible for all unemployment benefits." Minn. Stat. § 268.095, subd. 1 (2014). An exception to this rule applies if the employee "quit the employment because of a good reason caused by the employer." *Id.*, subd. 1(1). A good reason caused by the employer "is a reason: (1) that is directly related to the employment and for which the employer is responsible; (2) that is adverse to the worker; and (3) that would compel an average, reasonable worker to quit and become unemployed rather than remaining in the employment." *Id.*, subd. 3(a) (2014).

Substantial evidence, including testimony from relator and Habiger upon which the ULJ made credibility determinations, supports the ULJ's finding of fact that relator quit his job because he was moving, not because of concerns about safety. In explaining his credibility determinations, the ULJ said, "To the extent the parties disagreed, Habiger's testimony was more credible than [relator's] testimony because it was based on firsthand

5

knowledge, was specific, and [was] a reasonable explanation of what occurred under the circumstances." We defer to these credibility determinations. *See Skarhus*, 721 N.W.2d at 344 (setting forth deferential standard as to a ULJ's credibility determinations).

Because substantial evidence supports the ULJ's finding of fact that relator quit his employment because he was moving, which was not a good reason caused by the employer, we need not further address relator's arguments that dangerous conditions at his job provided a good reason caused by the employer to quit his employment.

**Affirmed.**