**Steven M. HANSON, Relator,**

v.

**CRESTLINER INC., Respondent,**

**Department of Employment and Economic Development, Respondent.**

**No. A08–2057.**

Court of Appeals of Minnesota.

Sept. 15, 2009.

Steven M. Hanson, Otsego, MN, pro se relator.

Crestliner Inc., Little Falls, MN, respondent employer.

Lee B. Nelson, St. Paul, MN, for respondent Department of Employment and Economic Development.

Considered and decided by WORKE, Presiding Judge; ROSS, Judge; and SCHELLHAS, Judge.

## OPINION

SCHELLHAS, Judge.

Relator brings a certiorari appeal from a decision of an unemployment-law judge (ULJ) that relator is ineligible for unemployment benefits because relator was discharged for misconduct after he was absent from work without notice. Because relator's absence without notice was caused by the unexpected hospitalization of his mother, relator did not engage in employment misconduct. We therefore reverse.

## FACTS

Relator Steven Hanson was employed by respondent-company Crestliner Inc. as a full-time boat finisher and worked approximately 50 hours per week. After his separation from Crestliner, relator sought unemployment benefits, stating that he quit his employment to care for his mother. Respondent Department of Employment and Economic Development (DEED) issued a determination of ineligibility that was based on relator quitting employment for personal reasons. Relator appealed on the basis that caring for a sick parent was "[a] very good reason to quit."

A ULJ held a telephone hearing to determine whether relator quit or was discharged. The ULJ asked relator what caused his separation from Crestliner, and relator answered that he took off three days in a row after his mother fell for which Crestliner gave him a three-day suspension. Relator asked Crestliner for a leave of absence, his request was declined, and his mother then fell again. The ULJ asked why relator did not go to work after August 20, 2008, and relator answered that his mother had fallen again on August 19 and he had to go to the hospital. Relator thought that Crestliner would fire him because he had just received the three-day suspension. Relator remained at the hospital for two days, August 20 and 21. Relator's mother passed away about a week later.

Crestliner Human Resources Manager Linda Everson testified to a different timeline and offered more details. On August 14, 2008, relator called and said that he was looking for assisted living for his mother. On August 18, he said he would be in later and needed a leave of absence to put his mother in a nursing home. Everson testified that "[a]t that point, not just because of those reasons, he was suspended for three days." The three days of suspension were August 20, 21, and 25. Relator said he would be back on August 26, but did not return. Everson terminated relator on August 26. She testified: "I have personal leave, I have family medical leaves, if he was caring for an ill mother. We surely have compassion to people who have issues caring for family members," but relator "would need, you know, to call and come in and do the paperwork and go through all of that." When the ULJ asked Everson if relator asked her for a leave, a Crestliner supervisor, Lyle Lalin, interjected, saying that relator had asked him for a leave of absence. When given an opportunity to question Everson, relator said that no one had explained that he had the options she mentioned. Everson said the options were posted on bulletin boards and in a handbook given out when relator started. Relator explained that "when something like that happens," he does not "drag out my employee book," and that he

thought if he had those options, Lalin should have mentioned them.

Lalin's testimony differed slightly from Everson's. According to Lalin, on August 20, 2008, he and relator discussed that relator's mother was ill and had fallen. Relator asked for a leave of absence for three days. Lalin then "changed the conversation" and said, "I need to suspend you for three days because of your attendance." Relator said he would be back on August 26. Lalin told him to call if something changed, and Lalin had not spoken with relator since August 20.

The ULJ questioned relator about why he did not return to work on August 26. Relator testified that he got a call from the hospital and "took off and went down to the hospital." He said that he did not tell anyone that he would not be returning on August 26, and that he never returned to work "[b]ecause [he] was terminated." He said that he was terminated "[t]hat same day" and that he believes that he spoke with Everson. Crestliner sent termination papers to relator on August 26.

The ULJ asked Everson about the suspension. Everson explained that: relator was suspended for "attendance"; Crestliner had call-in procedures; and she was willing to work with employees "if I know what I need to know to make them leaves or whatever." Everson said, "You failed to return from work after your suspension. Your suspension did not terminate you," and, "you did not report back to work or contact us." Everson also testified that relator had no other no-call/no-show days.

After questioning Everson again, the ULJ asked relator why he did not call to let Crestliner know that he would not be there on August 26, and relator answered that he was at the hospital and "they were doing test after test, after test and I had to sign paperwork." He explained: "I meant to call, but with all the things going on, you know, I guess it wasn't, it wasn't, there were bigger parties I guess, you know, but I meant to."

The ULJ found that relator was discharged because he was absent without notice on August 26. The ULJ found that relator did not return to work on August 26 because his elderly mother fell on August 25 and was hospitalized. The ULJ concluded that relator committed employment misconduct in failing to return to work when scheduled without giving notice of the absence and that relator was ineligible for unemployment benefits. Relator filed a request for reconsideration, and the ULJ affirmed the decision. This certiorari appeal follows.

## ISSUE

Did relator's absence without notice constitute employment misconduct?

## ANALYSIS

When reviewing the decision of a ULJ, this court may affirm or remand for further proceedings; or we may reverse or modify the decision if the substantial rights of the petitioner may have been prejudiced because the findings, inferences, conclusion, or decision are: "(1) in violation of constitutional provisions; (2) in excess of the statutory authority or jurisdiction of the department; (3) made upon unlawful procedure; (4) affected by other error of law; (5) unsupported by substantial evidence in view of the entire record as submitted; or (6) arbitrary or capricious." Minn.Stat. § 268.105, subd. 7(d) (2008).

▇▇▇ An employee discharged for employment misconduct is ineligible to receive unemployment benefits. Minn.Stat. § 268.095, subd. 4 (2008). "Whether an employee committed employment misconduct is a mixed question of fact and law." *Skarhus v. Davanni's Inc.*, 721 N.W.2d

340, 344 (Minn.App.2006). "Whether the employee committed a particular act is a question of fact." *Id.* A ULJ's factual findings will not be disturbed if the evidence substantially sustains them. *Id.* "But whether the act committed by the employee constitutes employment misconduct is a question of law, which we review de novo." *Id.*

"Employment misconduct" is "any intentional, negligent, or indifferent conduct, on the job or off the job that (1) displays clearly a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee or (2) displays clearly a substantial lack of concern for the employment." Minn.Stat. § 268.095, subd. 6(a) (2008). Conduct is not employment misconduct if it consists of: a single incident that does not have a significant adverse impact on the employer; conduct that the average reasonable employee would have engaged in under the circumstances; poor performance due to inability or incapacity; good faith errors in judgment; or absence because of illness or injury with proper notice to the employer. *Id.* Relator argues that he did not commit misconduct because his conduct was reasonable.

■ Generally, a single absence without permission from the employer may amount to misconduct. *See Del Dee Foods, Inc. v. Miller,* 390 N.W.2d 415, 417 (Minn.App. 1986) (stating that a single absence from work without permission may constitute misconduct); *Little v. Larson Bus Serv.,* 352 N.W.2d 813, 815 (Minn.App.1984) (stating that an employer has a right to expect an employee to work when scheduled).

But cases addressing absences also reflect concern with the reason for the absence. In *McCourtney v. Imprimis Tech., Inc.,* 465 N.W.2d 721, 724–25 (Minn.App. 1991), this court concluded that absences

due to a sick child were not misconduct because they were beyond the employee's control and did not display a disregard for employment. And, in *Prickett v. Circuit Science, Inc.,* 518 N.W.2d 602, 605 (Minn. 1994), the supreme court concluded that refusal to report for work was not misconduct where employee had short notice of a shift change and was unable to find child care. The court concluded that the conduct was not willful misconduct because the employee "seemed to have no choice but to do as he did." *Prickett,* 518 N.W.2d at 606.

*Prickett, Little,* and *McCourtney* were decided under the *Tilseth* definition of misconduct, which no longer applies in light of statutory amendments. *See* Minn.Stat. § 268.095, subd. 6(e) (2008) (defining misconduct and stating that no other definition applies); *In re Claim of Tilseth,* 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973) (defining misconduct). Under *Tilseth,* misconduct required an employee's willful activity that evinced a disregard of an employer's interest, disregard of the standards of behavior that an employer had a right to expect, or lack of concern for an employee's duties. 295 Minn. at 374–75, 204 N.W.2d at 646. The statute, as amended, is similar but defines misconduct to include "intentional, negligent, or indifferent" conduct that displays a serious violation of the standards the employer has a right to expect or a lack of concern for employment. Minn.Stat. § 268.095, subd. 6(a). But cases decided under the *Tilseth* definition are instructive on the areas in which the *Tilseth* and statutory definitions overlap and may be instructive on what conduct displays a lack of concern for employment or a violation of the standards of conduct that an employer has the right to expect.

■ We conclude that, because relator's absence was caused by the need to care for

an immediate family member, relator's absence without notice to his employer was similar to the absences in *Prickett* and *McCourtney*. Relator's absence did not display clearly a serious violation of the standards of behavior the employer has the right to reasonably expect or display clearly a substantial lack of concern for employment and, therefore, relator's conduct did not constitute employment misconduct.

Additionally, an employee does not commit misconduct when the employee displays conduct the average reasonable employee would have engaged in under the circumstances. Minn.Stat. § 268.095, subd. 6(a). We conclude that relator's absence without notice due to the unexpected hospitalization of his mother was conduct the average reasonable employee would have engaged in under the circumstances.

Because relator did not engage in employment misconduct, we reverse the ULJ's determination that relator was ineligible for unemployment benefits.

**DECISION**

■ An employee's absence without notice due to the unexpected hospitalization of an immediate family member is not employment misconduct because it does not display clearly a serious violation of the standards of behavior the employer has the right to reasonably expect or display clearly a substantial lack of concern for employment, and it is conduct the average reasonable employee would engage in under the circumstances.

**Reversed.**