*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0860**

Jacqueline Crosser,
Relator,

vs.

McAlpin Agency, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed January 12, 2015
Affirmed
Chutich, Judge**

Department of Employment and Economic Development
File No. 32224830-3

Jacqueline Crosser, Crystal, Minnesota (pro se relator)

McAlpin Agency, Inc., Columbia Heights, Minnesota (respondent employer)

Lee B. Nelson, St. Paul, Minnesota (for respondent department)


        Considered and decided by Reilly, Presiding Judge; Stauber, Judge; and Chutich,

Judge.

UNPUBLISHED OPINION

**CHUTICH**, Judge

Relator Jacqueline Crosser challenges the decision of the unemployment-law judge that she was discharged for employment misconduct and is therefore ineligible for unemployment benefits. Because substantial evidence supports the unemployment-law judge's decision, we affirm.

## FACTS

Relator Jacqueline Crosser worked for respondent McAlpin Agency, Incorporated (the agency) for approximately thirteen years as a customer service representative. Crosser was scheduled to show up for work at 8:00 a.m. every day. In January 2006, November 2007, June 2012, and August 2012, the agency documented instances of Crosser's poor attendance and tardiness. In August 2012, Crosser received a written warning stating that her poor attendance and tardiness were unacceptable. In July 2013, Crosser underwent a formal job review with the agency's president and owner, Steve McAlpin, who warned Crosser that her tardiness was a serious concern and that oversleeping was not an acceptable excuse.

The frequency of Crosser's tardiness and absenteeism increased in January 2014.[1] Crosser also reported late to work four times in January, although one of her tardy days was excused. On January 27, Crosser called McAlpin and left a message stating that she could not come into work because she thought her home had bed bugs; she later found

---

[1] On January 2, 7, 8, 9, 10, and 13, Crosser called in sick with the flu. The unemployment-law judge determined that these absences were not employment misconduct.

out that it did not. That same day, McAlpin returned Crosser's phone call and left her a message stating that her attendance was becoming an issue, and he demanded a doctor's note.

On January 31, Crosser called McAlpin and said that she was unable to work because her car broke down the night before, and she did not have a ride. In her hearing with the unemployment-law judge, Crosser was asked if she could have formed a contingency plan to deal with her car problems, to which Crosser responded, "Yeah, I guess, but . . . I didn't think it was going to be an issue. I didn't think I would get fired."

On February 3, McAlpin discharged Crosser for her "long-term pattern of poor attendance and tardiness." Crosser applied for unemployment benefits, and the Minnesota Department of Employment and Economic Development (the department) issued a determination of ineligibility because it found that she was discharged for employment misconduct. Crosser filed a timely appeal, and an evidentiary hearing was held in March 2014.

The unemployment-law judge affirmed the department's denial of benefits, determining that Crosser's actions were employment misconduct because the agency had a right to reasonably expect that Crosser would come to work and arrive on time. The unemployment-law judge concluded that Crosser's unexcused absences and tardiness in January violated this expectation. The unemployment-law judge also determined that Crosser knew or should have known that the agency could discharge her for poor attendance because she knew what time she was expected at work and knew her attendance was an issue.

3

Crosser sought reconsideration, and the unemployment-law judge affirmed the decision denying her benefits. This appeal by a writ of certiorari followed.

**D E C I S I O N**

The purpose of the Minnesota Unemployment Insurance Program is to provide "workers who are unemployed through no fault of their own a temporary partial wage replacement to assist the unemployed worker to become reemployed." Minn. Stat. § 268.03, subd. 1 (2014). The Minnesota Unemployment Insurance Law "is remedial in nature and must be applied in favor of awarding unemployment benefits." Minn. Stat. § 268.031, subd. 2 (2014). We review an unemployment-law judge's decision to determine whether, viewing the record as a whole, the decision is supported by substantial evidence and correctly states the law. Minn. Stat. § 268.105, subd. 7(d) (2014).

An unemployment-law judge's determination that an applicant is ineligible for employment benefits is reviewed de novo. *Stassen v. Lone Mountain Truck Leasing, LLC*, 814 N.W.2d 25, 30 (Minn. App. 2012). "Whether an employee committed employment misconduct is a mixed question of fact and law." *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). Whether an employee committed a particular act is a question of fact, and whether that act is misconduct is a question of law. *Id.* An unemployment-law judge's findings of fact are viewed in the light most favorable to the decision, and we defer to the unemployment-law judge's credibility determinations. *McNeilly v. Dep't of Emp't & Econ. Dev.*, 778 N.W.2d 707, 710 (Minn. App. 2010).

4

An employee who is discharged for misconduct is ineligible to receive unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2014). Employment misconduct is "any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." Minn. Stat. § 268.095, subd. 6(a) (2014).

An employer can establish and enforce reasonable rules to govern employee absences. *Cunningham v. Wal-Mart Assocs., Inc.*, 809 N.W.2d 231, 235 (Minn. App. 2011). As a general rule, an employee who refuses to abide by the employer's reasonable policies can be discharged for misconduct. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002). Depending upon the circumstances, a single absence without permission from an employer may amount to misconduct. *Hanson v. Crestliner Inc.*, 772 N.W.2d 539, 543 (Minn. App. 2009). Additionally, an employer is not always required to give an employee a warning before discharging the employee for employment misconduct. *See Auger v. Gillette Co.*, 303 N.W.2d 255, 257 (Minn. 1981) (stating that a warning was not essential to demonstrate that employees acted in willful disregard of employer's interest).

While Crosser does not dispute her unexcused absences and late arrivals to work, she argues that these attendance issues never rose to the level of "employment misconduct" because she never deliberately violated company policy or disregarded any standards of behavior that the agency set, and she was good at her job. We do not find these explanations persuasive.

The agency set a reasonable expectation that Crosser show up at work at 8:00 a.m. And the agency had a right to "establish and enforce reasonable rules governing employee absences." *Cunningham*, 809 N.W.2d at 235. Here, substantial evidence in the record supports the unemployment-law judge's decision that Crosser engaged in employment misconduct.

In January 2006, November 2007, and June 2012, the agency documented Crosser's absenteeism and tardiness issues. In August 2012, Crosser received a written warning stating that her attendance was an issue. In July 2013, Crosser was verbally warned about her excessive absences in a formal performance meeting. On January 3, 2014, Crosser was one hour and 45 minutes late to work, and on January 20, she was two hours and 30 minutes late. On January 27, after Crosser did not report to work, McAlpin left a voicemail warning her about tardiness and attendance issues.[2] Finally, on January 31, Crosser did not report to work, claiming that she had no ride. This pattern of tardiness and absenteeism demonstrates Crosser's refusal to abide by the agency's reasonable policies. *See Schmidgall*, 644 N.W.2d at 804.

Crosser contends that her absenteeism and tardiness were not employment misconduct because they were never intentional. But even if the employee's absenteeism or tardiness is neither willful nor deliberate, it may still be employment misconduct if it is "sufficiently chronic and excessive to demonstrate a lack of concern by [the employee]

---

[2] The unemployment-law judge's decision cited Crosser's tardiness on January 28 as one of the days that Crosser violated the agency's expectation that she arrive to work on time. But Crosser's tardiness on January 28 was excused due to a car issue. Even without this instance of tardiness, however, substantial evidence supports the unemployment-law judge's determination that Crosser engaged in employment misconduct.

6

for her job." *Jones v. Rosemount, Inc.*, 361 N.W.2d 118, 120 (Minn. App. 1985); *see also Evenson v. Omnetic's*, 344 N.W.2d 881, 883 (Minn. App. 1984) (holding that excessive tardiness or absences, particularly after warnings, may evidence employee's disregard of employer's interest).

Here, Crosser's history of absenteeism and tardiness at the agency dates back to 2006, and the problem worsened in January 2014. While her actions may not have been willful or deliberate, they were "sufficiently chronic and excessive to demonstrate a lack of concern" for her job. *See Jones*, 361 N.W.2d at 120.

Crosser also argues that she was never made aware that her acknowledged absences and tardiness would result in her discharge because the agency did not explicitly warn her. She claims that instead, the agency sent her mixed messages by giving her raises and awarding her extra time off despite her consistently poor attendance. But an employer is not required to give a warning before discharging an employee for misconduct. *See Auger*, 303 N.W.2d at 257. Furthermore, the record shows that on three separate occasions—in an August 2012 written review, in her July 2013 performance review, and in the January 27 phone message—Crosser was warned that her absenteeism and tardiness were serious concerns.

Finally, Crosser argues that while her acknowledged absences may have inconvenienced the agency, no actual harm was done to it. But "[h]arm is not necessary for a determination of misconduct." *Sivertson v. Sims Sec., Inc.*, 390 N.W.2d 868, 871 (Minn. App. 1986), *review denied* (Minn. Aug. 20, 1986). Because the agency does not

7

need to show that Crosser's actions harmed it, Crosser's argument here has no bearing on whether her actions were employment misconduct.

In sum, substantial evidence supports the unemployment-law judge's determination that Crosser's many absences met the law's definition of employment misconduct.

**Affirmed.**