*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1269**


Dan Delk, III,
Relator,

vs.

Pan-O-Gold Baking Co. (Corp.),
Respondent,

Department of Employment and Economic Development,
Respondent.


**Filed April 20, 2015
Affirmed
Halbrooks, Judge**

Department of Employment and Economic Development
File No. 32251008-3

Thomas H. Boyd, Matthew C. Robinson, Winthrop & Weinstine, P.A., Minneapolis, Minnesota (for relator)

Pan-O-Gold Baking Co. (Corp.), St. Cloud, Minnesota (respondent)

Lee B. Nelson, Munazza Humayun, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent Department of Employment and Economic Development)

        Considered and decided by Larkin, Presiding Judge; Halbrooks, Judge; and

Johnson, Judge.

UNPUBLISHED OPINION

**HALBROOKS**, Judge

Relator challenges the decision of the unemployment-law judge (ULJ) that he is ineligible for unemployment benefits because he was discharged for employment misconduct, arguing that he did not commit misconduct by failing to work two scheduled shifts after his Family Medical Leave Act (FMLA) leave ended. We affirm.

## FACTS

Relator Dan Delk, III was employed by respondent Pan-O-Gold Baking Co. as a full-time production divider operator from September 2000 to January 6, 2014, when he was discharged after failing to report for scheduled shifts on January 2 and 4. In May 2013, Pan-O-Gold had approved Delk's request for a 12-week FMLA leave of absence to undergo knee surgery, and after at least one extension, Delk was expected to return to work in January 2014. The employer asserted that Delk expressly agreed to return to work on January 2 and that he was told to check his schedule. Delk contends that no particular return date was set and that he was awaiting a scheduling call from a supervisor.

It is undisputed that Delk saw his nurse practitioner on December 31 and received a medical statement clearing him to return to work as of that date. On January 4, a supervisor called Delk and told him to report to a meeting with human resources on January 6. On January 6, Delk returned to his nurse practitioner, told her that he had been having transportation problems, and asked her to add "January 6" to his medical clearance statement, which she did. Delk then met with human resources and offered the

2

medical statement with two return-to-work dates on it. Pan-O-Gold discharged Delk after the meeting. Delk's separation notice provides that Delk "didn't come back after FMLA" and that he "[t]ried to cover up the reason why he didn't come back."

Delk applied for unemployment benefits and was found ineligible because he had been discharged for employment misconduct. On appeal, the ULJ held a hearing at which Delk and two human resources employees testified. The ULJ found that Delk agreed to return to work on January 2, knew or should have known that he was scheduled to work on January 2 and 4, and failed to return to work due to transportation problems. The ULJ determined that Pan-O-Gold "discharged Delk because it believed Delk lied about his reasons for not returning to work and because he was a no call/no show on January 2 and 4" and that Delk is ineligible for unemployment benefits because he was discharged for employment misconduct. Upon reconsideration, the ULJ affirmed the decision. This certiorari appeal follows.

## D E C I S I O N

We review a ULJ's decision to determine whether a party's substantial rights were prejudiced because the findings, inferences, conclusion, or decision are unsupported by substantial evidence in view of the record as a whole or affected by an error of law. Minn. Stat. § 268.105, subd. 7(d) (2014). An employee who was discharged is eligible for unemployment benefits unless the discharge was for employment misconduct. Minn. Stat. § 268.095, subd. 4(1) (2014). "Employment misconduct" is "any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably

3

expect of the employee; or (2) a substantial lack of concern for the employment." *Id.*, subd. 6(a) (2014). Whether an employee engaged in employment misconduct presents a mixed question of law and fact. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). "Whether the employee committed a particular act is a question of fact." *Id.* Whether that act constitutes employment misconduct is a question of law, which we review de novo. *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011).

## I.

Delk argues that the ULJ's factual findings that (1) Delk agreed that he would return to work from medical leave on January 2, (2) Delk knew or should have known that he was scheduled to work on January 2 and 4, and (3) transportation problems hindered Delk's return are unsupported by substantial evidence. Substantial evidence is "(1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; or (5) the evidence considered in its entirety." *Minn. Ctr. for Envtl. Advocacy v. Minn. Pollution Control Agency*, 644 N.W.2d 457, 466 (Minn. 2002). "We view the ULJ's factual findings in the light most favorable to the decision . . . ." *Skarhus*, 721 N.W.2d at 344.

Delk and Pan-O-Gold's human resources director contradicted each other's testimony on whether Delk agreed to return to work on January 2 and whether Delk knew or should have known that he was scheduled to work on January 2 and 4. There was no other direct evidence on these questions. The ULJ credited the human resources director's testimony, finding that "[i]t is believable that Delk originally agreed to return

4

to work on January 2" and that the employer's testimony was "credible because it was persuasive, reasonable, and described a more plausible sequence of events." The ULJ found that the employer's version was consistent with the date change on the nurse practitioner's note and with Delk's testimony about transportation problems.

Delk testified that although he had asked to return to work in January and was cleared to return to work as of December 31, he expected a supervisor to call him to inform him of his schedule. But he also testified that on January 6, he asked his nurse practitioner to alter his medical clearance statement because he had experienced transportation problems. The human resources director testified that Delk had told him in late November or early December that he would return to work on January 2 and that Delk knew that it was his responsibility to confirm his schedule. Specifically, he testified:

> Every . . . employee is to check their own schedule. He was told to check when his schedule was. . . . We have 1200 employees in this company. . . . The policy here is that the employee, if they've been out of work, they check their own schedule. They either call down here or they show up here and check that schedule and he was told to do that.

The ULJ noted that her findings were "based in large part on the employer's testimony which was credible." The ULJ implicitly discredited Delk's testimony that he had missed work because no one called to inform him of his schedule. Credibility therefore had a significant impact on the ULJ's decision. *See Wichmann v. Travalia & U.S. Directives, Inc.*, 729 N.W.2d 23, 29 (Minn. App. 2007) (concluding that credibility

has a significant effect on the decision when the ULJ's misconduct determination rests on disputed testimony).

We defer to the ULJ's credibility determinations when (1) the ULJ sets forth a valid reason for crediting or discrediting testimony that may significantly affect the ultimate decision and (2) the determinations are supported by substantial evidence. *Ywswf v. Teleplan Wireless Servs., Inc.*, 726 N.W.2d 525, 531-33 (Minn. App. 2007); *see also* Minn. Stat. § 268.105, subd. 1a(a) (2014)[1] (providing that the ULJ "must set out the reason for crediting or discrediting that testimony" when the witness's credibility "has a significant effect on the outcome of a decision"). Delk argues that neither prerequisite to deference is satisfied, and therefore we must reverse, or at least remand. We disagree. The ULJ credited the human resources director's testimony by weighing its plausibility in light of the other evidence presented and evaluating its reasonableness.[2] *See Ywswf*, 726 N.W.2d at 533 (providing that a comparison of testimony to other evidence is a permissible factor in evaluating credibility). Although we encourage a more thorough explanation of the reasons for crediting or discrediting a witness's testimony, in the context of this record we are satisfied that the ULJ's explanation is sufficient.

---

[1] The 2014 legislation recodified subdivision 1a(a) and merely clarified its language and therefore applies to pending litigation. *See Braylock v. Jesson*, 819 N.W.2d 585, 588 (Minn. 2012) ("When the Legislature merely clarified preexisting law, the amended statute applies to all future or pending litigation.").

[2] Notably, the ULJ did not credit all of the human resources director's testimony. After considering documentary exhibits, the ULJ rejected as speculation his testimony that Delk could have returned to work on December 1, 2013, but was fulfilling other obligations in December.

Based on the testimony of the human resources director, Delk's acknowledgment that he had asked to come back to work in January and was cleared to return as of December 31, his testimony that he told his nurse practitioner that he was experiencing transportation problems—which was at odds with his testimony that he had missed shifts due to lack of notice—and his effort to alter the medical clearance date on the statement, we conclude that the ULJ's reasons for her credibility determinations are supported by the record. Because the ULJ gave reasons for her credibility determinations and they are supported by the record, there is no basis to overturn the credibility determinations.

Giving deference to the ULJ's credibility determinations, there is substantial evidence in the record to support the findings that Delk agreed to return to work on January 2, that he knew or should have known that he was scheduled to work on January 2 and 4, and that Delk did not return to work due to transportation problems. Viewing the factual findings in the light most favorable to the decision, the factual findings are supported by substantial evidence in view of the record as a whole. "[T]his court will not disturb the ULJ's factual findings when the evidence substantially sustains them." *Peterson v. Nw. Airlines Inc.*, 753 N.W.2d 771, 774 (Minn. App. 2008), *review denied* (Minn. Oct. 1, 2008). Thus, the ULJ's factual findings will not be disturbed.

**II.**

Delk argues that the ULJ erred in determining that his conduct constituted employment misconduct because his absences were the result of good-faith error, miscommunication, and confusion regarding the FMLA policy. But because we uphold the ULJ's findings that Delk agreed to return to work on January 2, knew or should have

7

known that he was scheduled to work on January 2 and 4, and missed work due to transportation problems, we cannot conclude that his absences were the result of good-faith error, miscommunication, or confusion regarding the FMLA policy.

Delk also argues that his two absences should be viewed as a single incident. If the basis for the discharge "involved only a single incident, that is an important fact that must be considered." Minn. Stat. § 268.095, subd. 6(d) (2014). But Delk cites no authority in support of his argument that missing work twice is a single incident. And generally, a single unexcused absence from work may constitute a serious violation of the standards an employer has the right to reasonably expect, unless the absence was "beyond the employee's control and did not display a disregard for employment." *Hanson v. Crestliner Inc.*, 772 N.W.2d 539, 542-43 (Minn. App. 2009); *see also Del Dee Foods, Inc. v. Miller*, 390 N.W.2d 415, 417-18 (Minn. App. 1986) (discussing several Minnesota cases that have held that a single absence may constitute misconduct).

Even if Delk's absences were characterized as a single incident, under the facts found by the ULJ, this single incident would qualify as misconduct. *See Hanson*, 772 N.W.2d at 543; *see also Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 806 (Minn. 2002) ("A single incident can constitute misconduct when an employee deliberately chooses a course of conduct that is adverse to the employer."). The ULJ's factual findings do not support a conclusion that Delk's absences were beyond his control or that he did not display a disregard for employment.

Failure to return to work after a medical leave ends may also demonstrate an employee's "substantial lack of concern" for the job and be characterized as disqualifying

8

misconduct.  *See Fresonke v. St. Mary's Hosp.*, 363 N.W.2d 328, 330 (Minn. App. 1985) (interpreting 1983 version of the statute).  And "[d]ishonesty that is connected with employment may constitute misconduct." *Baron v. Lens Crafters, Inc.*, 514 N.W.2d 305, 307-08 (Minn. App. 1994); *see also Skarhus*, 721 N.W.2d at 342, 344 (concluding that employee's theft of an order of cheese bread and extra meat constituted disqualifying misconduct because it undermined the employer's ability to assign essential job functions to her).  The ULJ found that Pan-O-Gold discharged Delk in part because human resources personnel believed he had lied about the reasons for failing to return after his leave ended, and the record supports this finding.

"A good faith misunderstanding of the employer's rules or policies does not constitute misconduct." *Tuckerman Optical Corp. v. Thoeny*, 407 N.W.2d 491, 493 (Minn. App. 1987).  But the ULJ found that Delk knew or should have known that he was supposed to be at work and did not report due to transportation problems.  There was no misunderstanding.  We conclude that the ULJ did not err in determining that "Delk's conduct was a serious violation of standards of behavior the employer had a right to reasonably expect and showed a substantial lack of concern for his employment," and that he is ineligible for unemployment benefits because he committed employment misconduct.

**Affirmed.**