*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-0474**

Georgina Pletcher,
Relator,

vs.

River Hill Assisted Living, Inc.,
Respondent,
Department of Employment and Economic Development,
Respondent.

**Filed December 7, 2015**
**Affirmed**
**Stauber, Judge**
**Chutich, Judge, dissenting**

Department of Employment and Economic Development
File No. 32950407-3

Georgina Pletcher, Superior, Wisconsin (pro se relator)

River Hill Assisted Living, Inc., Duluth, Minnesota (respondent employer)

Lee B. Nelson, Tim C. Schepers, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Chutich, Presiding Judge; Ross, Judge; and Stauber, Judge.

UNPUBLISHED OPINION

**STAUBER**, Judge

In this certiorari appeal from the decision of the unemployment-law judge (ULJ) that relator is ineligible for unemployment benefits because she was discharged for employment misconduct, relator argues that she was a good employee and that the employer fabricated the allegations against her. We affirm.

## FACTS

In 2006, relator Georgina Pletcher began working as a full-time caregiver and cook for respondent River Hill Assisted Living, Inc., which operates a ten-room home for senior citizens. Eight years later, on September 28, 2014, relator was discharged for poor performance and "lack of professionalism." Relator subsequently applied for unemployment benefits with respondent Minnesota Department of Employment and Economic Development (department). The department determined that relator was ineligible for benefits because she was discharged for employment misconduct. Relator appealed that determination, and a de novo hearing was conducted.

At the hearing, Mark Stenhammer, the owner of River Hill, testified that relator generally displayed a poor attitude and that residents complained that relator frequently argued with them about petty matters. Stenhammer testified that, for example, relator admonished a resident for eating her dessert before eating the meal and that relator refused to allow residents in the dining area prior to the scheduled meal time, even if the food was prepared and ready to be served. Stenhammer also testified that he frequently found relator watching television in the kitchen when she was supposed to be caring for the residents.

And according to Stenhammer, the family members of residents often complained that relator was neglecting the residents.

Stenhammer testified that he warned relator about her demeanor and lack of professionalism 10 to 12 times, but she always denied doing anything wrong and "always had to argue through anything I wanted to talk to her about." Stenhammer further testified that he continued to employ relator out of a sense of compassion and because hiring a new employee to replace her was expensive and time consuming. But, according to Stenhammer, the "final straw" was a resident's complaint that "she pays a lot of rent and . . . always has to put up with a bitchy cook."

Relator disagreed with Stenhammer's assessment of her demeanor during her employment at River Hill. Instead, relator claimed that she was a "good employee" and that the clients "loved" her. Relator further claimed that she was never warned that she was failing to meet her employer's expectations.

The ULJ found that "Stenhammer is more credible regarding [relator's] conduct during the employment" and that relator's behavior "displayed a lack of professionalism during [her] employment." The ULJ also found that relator's conduct was "clearly a serious violation of the employer's reasonable expectations." Thus, the ULJ concluded that relator was ineligible for unemployment benefits because she was discharged for employment misconduct. Relator requested reconsideration, and the ULJ affirmed the decision. This certiorari appeal followed.

**D E C I S I O N**

Relator challenges the ULJ's determination that she committed employment misconduct. On certiorari appeal from a decision by the ULJ, we "may reverse or modify the [ULJ's] decision if the substantial rights of the petitioner may have been prejudiced because the findings, inferences, conclusion, or decision are" not supported by substantial evidence in the record or are affected by an error of law. Minn. Stat. § 268.105, subd. 7(d)(4)-(5) (2014).

An applicant who is discharged from employment because of employment misconduct is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2014). "Employment misconduct" is defined as "any intentional, negligent, or indifferent conduct . . . that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." *Id.,* subd. 6(a) (2014). Whether an employee committed misconduct is a mixed question of fact and law. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002). Whether an employee committed a particular act is a question of fact. *Skarhus v. Davvani's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). But whether a particular act demonstrates employment misconduct is a question of law, which this court reviews de novo. *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011).

The dissent concludes that relator's conduct did not rise to the level of employment misconduct. Although we acknowledge that whether relator's conduct rose to the level of employment misconduct is a close issue, it is not the issue raised by

4

relator. Rather, relator challenges the ULJ's findings that she committed the particular acts that the ULJ determined to be misconduct, arguing that she was a good employee and Stenhammer fabricated the allegations against her.

Relator's assertions implicate credibility determinations, and it is well settled that "[c]redibility determinations are the exclusive province of the ULJ and will not be disturbed on appeal." *Skarhus*, 721 N.W.2d at 345. Here, Stenhammer testified that relator generally displayed a "bad attitude" and that the residents and their family members frequently complained about relator. Stenhammer also testified that relator was frequently observed watching television in the kitchen rather than caring for the residents. If believed, this testimony establishes that relator's conduct constituted a serious violation of the standards of behavior that Stenhammer had the right to reasonably expect from his employees. Although relator denied the allegations that she acted in an unprofessional manner, the ULJ found Stenhammer's testimony to be more credible because he "presented a highly plausible chain of events that would lead to his decision to discharge" relator, and "presented several examples of poor conduct displayed by [relator] during the employment." The evidence in the record substantially supports the ULJ's credibility determination, and we defer to the ULJ's credibility determinations. *See Skarhus*, 721 N.W.2d at 345. Therefore, the ULJ did not err by concluding that relator was ineligible for unemployment benefits because she was discharged for employment misconduct.

**Affirmed.**

**CHUTICH,** Judge (dissenting)

I respectfully dissent from the majority's legal conclusion that the unemployment law judge correctly concluded that Georgina Pletcher committed employment misconduct. Given the remedial nature of the unemployment-compensation statutes, and the description of the conduct at issue here, especially when placed in the context of the parties' eight-year employment relationship, I do not believe that Georgina Pletcher's behavior rose to the level of employment misconduct that would disqualify her from receiving benefits.

Because the Minnesota Unemployment Compensation Law is "remedial in nature and must be applied in favor of awarding unemployment benefits, . . . any statutory provision that would preclude an applicant from receiving benefits must be narrowly construed." Minn. Stat. § 268.031 (2014); *Jenkins v. American Exp. Financial Corp.*, 721 N.W.2d 286, 289 (Minn. 2006). The majority correctly sets out the definition of employment misconduct contained in Minn. Stat. § 268.095, subd. 6(a)(1) (2014). Another statutory provision specifically states, however, that "[r]egardless of paragraph (a)," "simple unsatisfactory conduct" or "conduct that is a consequence of the applicant's inability or incapacity" is not employment misconduct." *Id.* at subd. 6(b)(3), (5). Whether an employee "was properly disqualified from receipt of unemployment compensation benefits is a question of law on which we are free to exercise our independent judgment." *Jenkins*, 721 N.W.2d at 289.

Here the record shows that Pletcher, who was sixty when discharged, had worked for River Hill Assisted Living for eight years since it opened in 2006. She worked as the

sole cook and also as a care giver for the ten residents who lived in the facility. The record shows that the main reason that she was discharged was for a lack of professionalism and a difficulty in keeping a positive attitude. Examples given by her employer included arguing with residents about not eating their dessert first before their meal or about the quality of the meatloaf that was served. According to her employer, this difficulty in keeping a positive attitude had been a constant, "probably the whole time she was employed here." The employer also noted that Pletcher did not respond to its telephone calls or texts when she was off-duty. The last straw for the employer before it fired her on September 28, 2014, was when a resident complained in August that she "pays a lot of rent and . . . always has to put up with a bitchy cook."

Pletcher, who was representing herself at the hearing, did not present any evidence from any other witness to counter the charge of unprofessionalism until she requested reconsideration, which the unemployment law judge found was too late under the rules.[1] Even accepting the record as developed at the hearing and honoring the unemployment-law judge's credibility determinations, however, Pletcher's negative attitude seems more akin to simple unsatisfactory performance than to employment misconduct, especially given the employer's testimony that her conduct had not changed appreciably in all the time that she had worked for River Hills. *See Bray v. Dogs & Cats Ltd.*, 679 N.W.2d 182 (Minn. App. 2004) (reversing determination of disqualification under earlier version of

---

[1] Upon reconsideration, she submitted letters from two family members of River Hills residents who praised her care and from the nurse who supervised her the last five years at River Hill. The supervisor "highly recommended" Pletcher stating that she "has an excellent rapport with people of all ages . . . is reliable and responsible and takes great pride in what she does."

the statute finding that relator was discharged for inefficient, unsatisfactory conduct, and poor performance due to inability). If her behavior displayed a serious violation of the standards that the employer had a right to reasonably expect, it is difficult to believe that she would have been employed by River Hill as long as she was. Because the record evidence does not support the legal conclusion that Pletcher was discharged for employment misconduct, I would reverse the unemployment-law judge's ineligibility determination.