*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-1036**

Kenneth M. Kuller,
Relator,

vs.

TVI, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed March 9, 2026
Affirmed
Florey, Judge**[*]

Department of Employment and Economic Development
File No. 50921776-5

Kenneth Kuller, Burnsville, Minnesota (self-represented relator)

TVI, Inc., St. Louis, Missouri (respondent employer)

Rebecca Wittmer, Melannie Markham, Keri A. Phillips, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

        Considered and decided by Worke, Presiding Judge; Bratvold, Judge; and Florey, Judge.

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**FLOREY**, Judge

Relator Kenneth Kuller challenges a decision affirming his ineligibility for unemployment benefits from respondent Minnesota Department of Employment and Economic Development (DEED). Kuller advances two arguments on appeal. He asserts first that the unemployment law judge (ULJ) failed to consider new evidence submitted at an evidentiary hearing. He argues second that the record lacks substantial evidence that his conduct violated any workplace policies and constituted employment misconduct. We conclude that the ULJ's decision reflects careful consideration of the relevant evidence and that relator engaged in employment misconduct by violating known and acknowledged employment policies, and we affirm.

## FACTS

Respondent TVI, Inc. (d/b/a Savers) discharged relator Kenneth M. Kuller in July 2024 after an internal investigation found that Kuller, in his position as an associate retail manager, exploited Savers's coupon policy and falsified customer transactions. Kuller applied for unemployment benefits, representing that Savers did not provide any reason for his termination or evidence of misconduct. DEED determined Kuller eligible and disbursed approximately $6,000 in unemployment benefits to him. Savers later appealed DEED's determination, stating that it had terminated Kuller for violating "reasonable and known" employment policies and that Kuller was thus ineligible for unemployment benefits. Savers simultaneously provided Kuller with a termination letter explaining that it had discharged him for violating its theft and fraud policy.

Savers and Kuller appeared for a contested hearing before an ULJ in October 2024. Store manager Jason Shumate testified on behalf of Savers. Shumate explained that Savers has a markdown policy that authorizes its retail managers, if presented with valid coupons, to discount customer transactions consistent with their "printed written conditions." Kuller had signed an acknowledgment confirming that he read and understood Savers' markdown policy. Shumate stated that Kuller exploited the markdown policy by creating nonexistent "no-tag" items so customers would meet the dollar thresholds for certain discounts. Neither party produced the coupons at issue, but Kuller explained that they discounted $2.00 off from a purchase of $5.00 or more. Kuller testified on his own behalf that in four to five circumstances, customers approached him with $4.99 in purchase totals. Kuller said that he created no-tag items to add one cent to each transaction to meet the five-dollar threshold. Savers' loss-prevention manager confronted Kuller about these transactions, and he provided a written statement admitting this conduct. Savers then terminated Kuller for violating its markdown policy and falsifying company documents under its employee-conduct guidelines. The ULJ asked Shumate to clarify the document-falsification violation, and Shumate explained that Kuller's creation of no-tag items for nonexistent merchandise generated false inventory records.

The ULJ later issued a written decision that credited only Shumate's testimony. The ULJ also found that Kuller was discharged for employment misconduct, ineligible for unemployment benefits, and liable for returning the value of benefits already disbursed. Kuller requested reconsideration, and the Chief ULJ set aside the decision for an additional evidentiary hearing with a different ULJ. The Chief ULJ narrowed the issue to the

3

circumstances of Kuller's discharge and instructed Savers to produce the coupon. The parties appeared for the evidentiary hearing in January 2025, at which Shumate again testified about Kuller's document falsification. Shumate explained that Kuller's entry of no-tag items created false inventory records and purchase data, disrupting Savers' inventory system. Shumate also stated that the creation of these inaccurate records violated Savers' employee-conduct guidelines against "falsifying records." Kuller challenged Shumate's testimony, contending that entering no-tag items did not affect inventory record keeping. Kuller also offered alternative theories for his termination, including pretext for age discrimination. Kuller argued lastly that Savers failed to produce the coupon, but he later agreed that his testimony sufficiently established its terms.

The ULJ's second decision was the same as the first. Kuller requested reconsideration again, but the ULJ declined further review by issuing an Order of Affirmation.

Kuller appeals by certiorari.

## DECISION

Kuller appeals the ULJ's affirmation order, advancing two arguments. Kuller argues first that the ULJ failed to consider new evidence submitted at the evidentiary hearing. Kuller argues second that the record lacks substantial evidence that his conduct constituted employment misconduct and disqualified him from claiming unemployment benefits.

## I.

Kuller first challenges the scope of the ULJ's evidentiary review when reconsidering his eligibility determination. Kuller points to the language of the affirmation

4

order, which limited the ULJ's review to evidence submitted at the "original hearing" under Minnesota Statutes section 268.105, subdivision 2(c) (2024). Kuller reasons that the ULJ only considered evidence presented at the first appeal hearing and not the subsequent evidentiary hearing, prejudicing the factual and legal determinations of his eligibility. We disagree.

We accept Kuller's argument that the affirmation order misstates the standard for reviewing evidence on reconsideration. *See* Minn. Stat. § 268.105, subd. 2(c). The statute provides that the ULJ must not consider any evidence "not submitted at the [appeal] hearing" when deciding a request for reconsideration, except for purposes of granting an additional hearing. *Id.* Kuller contends that the ULJ's characterization of a "hearing" as only the "original" appeal hearing results in two consequences: it excludes non-original hearings—like evidentiary hearings—and the evidence there admitted. The goal of statutory interpretation, which we review de novo, is to ascertain and effectuate the legislature's intent. *Superior Glass, Inc. v. Johnson*, 896 N.W.2d 137, 142 (Minn. App. 2017). We construe unemployment-benefits statutes that limit eligibility narrowly. Minn. Stat. § 268.031, subd. 2 (2024).

The unemployment-benefits statute allows a party to request reconsideration of an eligibility determination. *See* Minn. Stat. § 268.105, subd. 2 (2024). The ULJ then affirms or denies or sets aside the eligibility determination to gather "additional evidence" at an "additional hearing." *Id.*, subds. 2(f), 3a(d) (2024). The ULJ must order an additional hearing if a party shows (1) that the evidence admitted at the first hearing was false and affected the outcome, or (2) that unsubmitted evidence would affect the outcome in a new

5

hearing. *Id.*, subd. 2(c). These provisions, read together, permit the ULJ to order an evidentiary hearing to gather evidence and to issue a decision with "new findings of fact[.]" *Id.*, subds. 2(f)(3), 3a(d). We interpret this language to mean that the ULJ's review of the record on reconsideration extends to the first and subsequent hearings. We therefore agree that the language as stated in the affirmation order as to the scope of the evidence to be considered on reconsideration can be read as contrary to the statute.

But we reject Kuller's argument that the ULJ's reconsideration was limited to a fragmentary review of the record that prejudiced his substantial rights. *See id.*, subd. 7(d). The ULJ reopened the record at the evidentiary hearing to admit new evidence and arguments that the affirmation order expressly contemplates, including the issue of the unproduced coupon and Kuller's alternative theories for discharge. We conclude that the ULJ, though using imprecise language in the affirmation order, complied with the statutory duties to gather and consider new evidence together with the record from the first hearing.

## II.

We now address Kuller's second argument that the circumstances of his discharge did not constitute employment misconduct. Kuller argues broadly that the record lacks substantial evidence that his conduct violated Savers' markdown policy and that he falsified company records. Kuller concludes that these grounds for termination neither met the statutory threshold for employment misconduct nor disqualified him from claiming unemployment benefits. We begin by viewing the ULJ's factual findings in the light most favorable to the affirmation order, which we will not disturb if substantially supported by the evidence. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). We

6

then review de novo whether Kuller's acts constituted employment misconduct. *Id.* Neither challenge prevails.

We are unconvinced that the record lacks substantial evidence of Kuller's markdown-policy violations. Substantial evidence includes (1) relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than *some* or *any* evidence; or (4) the evidence considered in its entirety. *Dourney v. CMAK Corp.*, 796 N.W.2d 537, 539 (Minn. App. 2011). The undisputed record shows that Savers' markdown policy authorized its retail managers to discount transactions consistent with a coupon's printed conditions. Kuller acknowledged that he read and understood this policy. And he testified that the coupon's printed conditions applied a two-dollar discount to a minimum purchase of five dollars. Kuller conceded that he created no-tag items to elevate customer transactions over the five-dollar threshold and admitted to doing so about "about 4-5 times" in his written statement to Savers' loss-prevention manager. The record therefore contains substantial evidence that Kuller discounted ineligible transactions violating Savers' markdown policy.

There is also substantial evidence in the record to support the ULJ's finding that Kuller falsified company records. Shumate testified that employees were trained to create no-tag items for marked, existing inventory. Shumate stated that Kuller created no-tag items for nonexistent merchandise that generated false inventory records and purchase data, violating Savers' record-falsification policy. Kuller disputed Shumate's explanation, but the ULJ resolved this conflicting testimony in Shumate's favor. Because this court does not disturb a ULJ's credibility determinations, we observe that Shumate's testimony

7

provided substantial evidence of Savers' record-falsification policy. *See Skarhus*, 721 N.W.2d at 345. We therefore discern that the record substantially supports the ULJ's factual findings.

We next address whether Kuller's conduct satisfied the statutory threshold for employment misconduct. Employment misconduct means any intentional, negligent, or indifferent conduct—either on or off the job—that seriously violates the standards of behavior that an employer reasonably expects of an employee. Minn. Stat. 268.095, subd. 6(a) (2024). "An employer has a right to expect that its employees will abide by reasonable instructions and directions." *Vargas v. Nw. Area Found.*, 673 N.W.2d 200, 206 (Minn. App. 2004), *rev. denied* (Minn. Mar. 30, 2004). And the employee's refusal to abide by these employment policies, if seriously violated, amounts to misconduct. *See Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002). This court has observed that financial losses, however nominal, can seriously violate employer policies and amount to employment misconduct. *See Skarhus*, 721 N.W.2d at 344 (establishing that an employee's termination for a four-dollar theft significantly affected the employer's operations). The record here reflects that Savers had a reasonable expectation to prevent abuse of its markdown policy and to maintain accurate inventory records. Kuller sets forth two challenges, but our de novo review leads us to reject both.

Kuller contends first that his termination was pretext for age discrimination as two unrelated, flagged transactions initiated Savers' investigation into his conduct. But this argument is unavailing because Kuller violated Savers' reasonable expectation of employee conduct by acknowledging Savers' markdown policy, by understanding the

8

coupon's printed conditions, and by facilitating four to five violative transactions. He argues second that his termination resulted from a managerial mistake because Savers' loss-prevention manager was unfamiliar with common retail practices. But the serious-violation inquiry focuses only on employee conduct, and, again, Kuller admitted to the underlying violations. *See Stagg v. Vintage Place, Inc.*, 796 N.W.2d 312, 316 (Minn. 2011). Our careful review of the facts and law leads us to conclude that Kuller engaged in intentional or indifferent conduct that violated Savers' reasonable employment expectations.

In sum, the record contains substantial evidence that Kuller violated Savers' markdown policy and falsified company records. Because these acts satisfy the statutory threshold for employment misconduct, we discern no error in the ULJ's factual findings and legal conclusions.

**Affirmed.**